UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 18-1633 JGB (SHKx)** | Date | May 1, 2020 |
| Title | *Marc Rivera v. Western Express Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) DENYING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 27); (2) DENYING Defendant's Motion to Strike (Dkt. No. 31); and (3) VACATING the May 4, 2020 Hearing

    Before the Court are two motions: (1) a Motion for Preliminary Approval of Class Action Settlement filed by Plaintiff Marc Rivera and (2) a Motion to Strike Objection filed by Defendant Western Express, Inc. ("Preliminary Approval Motion," Dkt. No. 27; "Motion to Strike," Dkt. No. 31.)  The Court finds these matters appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the motions, the Court DENIES the motions.  The Court VACATES the hearing set for May 4, 2020.

## I.  BACKGROUND

    On May 15, 2018, Plaintiff Marc Rivera filed a complaint against Defendant Western Express, Inc. and Does 1–10 on behalf of himself and a putative class in the Superior Court for the State of California in the County of San Bernardino.  ("Complaint," Dkt. No. 1-1.)  On June 26, 2018, Plaintiff filed a first amended complaint.  ("FAC," Dkt. No. 1-2.)  The FAC alleges six causes of action: (1) Failure to Pay Minimum Wages for All Hours Worked; (2) Failure to Provide Mandated Meal Periods or to Pay Additional Wages in Lieu Therefore; (3) Failure to Provide Mandated Rest Periods or to Pay Additional Wages in Lieu Therefore; (4) Failure to Timely Pay Wages; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Violation of Unfair Competition Law; (7) Civil Penalties Pursuant to PAGA for Failure to Pay Minimum Wage; (8) Civil Penalties Pursuant to PAGA for Failure to Provide Meal and Rest Breaks; (9)

Civil Penalties Pursuant to PAGA for Non-Compliant Wage Statements; (10) Civil Penalties Pursuant to PAGA for Untimely Payment of Wages; and (11) Civil Penalties Pursuant to PAGA for Violation of the Applicable IWC Orders.  (Id.)  Defendant removed the case on August 3, 2018.  (Dkt. No. 1.)

On February 26, 2020, Plaintiff filed the Preliminary Approval Motion.[1]  (Preliminary Approval Motion.)  In support of the Preliminary Approval Motion, Plaintiff filed the declarations of J. Jason Hill, Alvin B. Lindsay, and David Yeremian.  ("Hill Declaration," Dkt. No. 27-2; "Lindsay Declaration," Dkt. No. 27-3; "Yeremian Declaration," Dkt. No. 27-4.)  Defendant did not oppose the Preliminary Approval Motion.  On March 19, 2020, Markson Plaintiffs ("Objector")  filed an objection to the Motion.  ("Objection," Dkt. No. 29.)  Plaintiff replied in support of the Motion on March 27, 2020.  ("Preliminary Approval Reply," Dkt. No. 30.)

That same day, March 27, 2020, Defendant filed the Motion to Strike.  (Motion to Strike.)  Objector opposed the Motion to Strike on April 6, 2020.  ("Strike Opposition," Dkt. No. 33.)  Defendant replied in support of the Motion to Strike on April 13, 2020.  ("Strike Reply," Dkt. No. 34.)

## II.   LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class.  La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted).  A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[2]  See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class.  See Fed. R. Civ. P. 23(a).  Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication.  Fed. R. Civ. P. 23(b).

---

[1] The Preliminary Approval Motion purports to be brought by both Plaintiff and Jacqulyn Hutto.  Ms. Hutto is not yet a party to this case as Plaintiff has not yet filed his Second Amended Complaint, which will name her as a plaintiff.  Accordingly, the Preliminary Approval Motion is brought by Plaintiff alone.

[2] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be _potentially_ fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

### III. MOTION TO STRIKE

Under Rule 12(f) of the Federal Rules of Civil Procedure, a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). Motions under Rule 12(f) are "generally regarded with disfavor because of the limited importance of pleading in federal practice[.]" Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). A court has discretion in determining whether to strike matter from a pleading. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1528 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).

Objectors are counsel for the putative class in a separate action brought against Defendant: Markson v. CRST, et al., Case No. 5:17-cv01261-FMO-SPx. (Objection at 1.) Neither the Objectors, nor the plaintiffs in Markson, however, are current or former employees of Defendant. Defendant argues that because Objectors have never been employed by Defendant, they are not members of the class and therefore lack standing to object to the settlement.[3] (Motion to Strike at 3.) Objectors acknowledge that they are not members of the proposed class but argue that they have standing because "members of the putative Markson class are also members of the settlement class in this case." (Strike Opposition at 8.) However, they fail to cite any case law to suggest that lawyers who _seek_ to represent a class have standing to assert the rights of the putative class members in other actions. Neither case cited by Objectors support their argument for standing.

---

[3] Defendant also attacks the substance of the Objection. (See Motion to Strike at 4–6.) Such arguments are more properly made in an opposition, rather than a Motion to Strike, which is not a vehicle for the parties to obtain additional pages of merits briefing. That an argument is wrong is not grounds to strike that argument. Accordingly, the Court will only address the standing arguments.

In Padilla v. Willner, 2016 WL 860948, (N.D. Cal. Mar. 7, 2016), plaintiffs argued that they had standing to object to a class that they were not members of because they (1) were injured by exclusion from the class and (2) they were injured by orders filed in their case that were based upon the class litigation. Id. at *6. They did not attempt to assert the rights of putative class members in a separate action. Fraser v. Asus Computer Int'l, 2012 WL 6680142, at *3 (N.D. Cal. Dec. 21, 2012) is likewise inapplicable: there were no objectors in that case and therefore it provides no guidance regarding the standing of non-member objectors.

While Objectors cite no authority holding that lawyers who seek to represent class members in a separate action have standing to object on behalf of those class members, Defendant cites no authority stating that they don't. The proposed Markson class includes current and former employees of Defendant. (Objection at 2.) If the Markson class is certified as proposed, Objectors would represent members of the Rivera class. Moreover, Objectors have an obligation to act in the interests of the class even before certification. It is logical, therefore, that their obligation to act in the interests of the putative class would create a right to object to a settlement that may interfere with the rights of putative class members.

The standing to object to class settlement is not a broad power—it is simply the ability to raise with the Court arguments against settlement approval, which the Court is free to reject. Because it is the Court's obligation to consider the interests of the absent class members, it should consider all arguments against settlement approval, even when they are not raised by any party. Here, for example, Objectors argue that the release of claims is overbroad. The Court should assess whether the release is overbroad whether or not Objectors have standing.

It is difficult sometimes for the Court to know of any arguments against settlement because it is in the interests of the parties, who want the settlement to be approved, not to raise them. Allowing objectors, therefore, only enhances the protection of absent class members. The Objectors seek only to inform the Court of how the settlement may impact the rights of absent class members; the Court ought to consider that information. Accordingly, the Court concludes that Objectors have standing and DENIES the Motion to Strike.

### IV.   CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

Plaintiff and Defendant seek certification of the proposed settlement class: "[a]ll current and former hourly non-exempt drivers residing in the State of California at any time during the period from October 26, 2016 to January 13, 2020." (Hill Declaration ¶ 9.) The Court first addresses the Rule 23(a) requirements and then turns to the Rule 23(b) requirements.

**A. Requirements of Rule 23(a)**

   **1. Numerosity**

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be

impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, 40 or more members will generally satisfy the numerosity requirement. Id. A plaintiff has the burden to establish that this requirement is satisfied. United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010). The proposed class is likely to include over 2,000 drivers. (Preliminary Approval Motion at 16.) Accordingly, the Court concludes that the numerosity requirement is satisfied.

### 2. Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Here, all class members were subject to similar pay schemes that Plaintiff alleges resulted in missed breaks and unpaid wages for all class members. (Preliminary Approval Motion at 17.) Their claims are therefore subject to common legal theories. Accordingly, Plaintiff has established commonality.

### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020. Here, Plaintiff argues his claims are typical of the class because he was subject to the same piece-rate pay plan that encouraged productivity at the expense of safety and therefore would establish the elements of the claims in the same way that other members of the class would. (Preliminary Approval Motion at 18.) Accordingly, the Court is satisfied that Plaintiff has met the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Plaintiff maintains there is no conflict of interest between himself and members of the proposed settlement class, as his and their interests in this litigation are aligned. (Motion at 18.) Plaintiff also represents he has litigated and will continue to litigate this case in the interest of the class. (Id. at 19.) Thus, Plaintiff does not have a conflict of interest with the class that might prevent him from vigorously representing the interests of class members who suffered the alleged violations. Finally, Class Counsel is experienced in litigating wage and hour class actions. (See Hill Declaration ¶¶ 3–7, 33–35.) Accordingly, the Court concludes both the class representative and Class Counsel will adequality represent the interests of the proposed class.

**B. Requirements of Rule 23(b)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Here, Plaintiff alleges the Agreement satisfies the requirements of Rule 23(b)(3). (Motion at 11–13.)

Rule 23(b)(3) requires (1) issues common to the whole class to predominate over individual issues and (2) that a class action be a superior method of adjudication for the controversy. See Fed. R. Civ. P. 23(b)(3). As to predominance, the "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). "[T]he examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" Id. (same). A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id.

Here, adjudication by representation is warranted because questions common to the settlement class represent a significant aspect of the case and can be resolved for all members of the class in a single adjudication. Specifically, Plaintiff contends that common issues predominate because the claims of both Plaintiff and the proposed class stem from Defendant's "piece-meal" pay policy. (Motion at 7–8.) The Court is satisfied that the common questions predominate.

A class action must also be superior to other methods of adjudication for resolving the controversy. Fed. R. Civ. P. 23(b)(3). To determine superiority, a court's inquiry is guided by the following pertinent factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). However, "[confronted] with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." <u>Amchem</u>, 521 U.S. at 620.

Here, Plaintiff notes the class mechanism provides an effective mechanism for vindicating the claims of class members because many class members lack the resources to shoulder the burden and expense necessary to prosecute their claims. (Preliminary Approval Motion at 20.) Thus, individual actions are unlikely. Accordingly, the Court concludes the superiority requirement is satisfied.

## V. SETTLEMENT AGREEMENT

### A. Settlement Class

The proposed settlement class includes: "[a]ll current and former hourly non-exempt drivers in residing in the State of California at any time during the period from October 26, 2016 to January 13, 2020." ("Agreement," Hill Declaration Exhibit 1 at 17.)

### B. Financial Terms

Below is an overview of the financial terms of the Agreement:

- Gross settlement amount: $1,100,000
- Attorneys' fees: $366,300
- Litigation costs: $10,000
- Settlement administration costs: $30,000
- Service award to class representatives: $20,000
- PAGA payment to LWDA: $37,500

- Net settlement amount: $636,200

(Agreement ¶¶ 28–30.) The gross settlement amount is non-reversionary. (<u>Id.</u> ¶ 48.) Any checks that remain uncashed 120 days after the date of mailing will be canceled, and the funds will either be distributed to *cy pres* or be transmitted to the California State Controller's Office, Unclaimed Property Division, in the class member's name. (<u>Id.</u>)

#### 1. Settlement Class Members

Each class member shall be eligible to receive payment and will not be required to submit a claim form. (Preliminary Approval Motion at 7; Agreement ¶ 16.) Each class member automatically will be issued payment as long as he or she does not timely and validly request exclusion. (<u>Id.</u>)

### 2. Class Representative

The Agreement provides for a service award of up to $10,000 for both Plaintiff Rivera and proposed plaintiff Jacqulyn Hutto. (Agreement ¶ 29.)

### 3. Settlement Administration Costs

The proposed settlement administrator, CPT Group ("Settlement Administrator"), will be paid from the gross settlement amount for the cost of administering the Agreement. (Agreement ¶¶ 23, 30.) The costs of settlement administration will be $30,000. (Id.)

### 4. Attorneys' Fees and Costs

Class counsel will seek an award of attorneys' fees not to exceed $366,300 (or 30% of the gross settlement amount) and litigation costs not to exceed $10,000. [4] (Agreement ¶ 28.)

## C. Injunctive Relief

The Agreement does not include any injunctive relief.

## D. Release

All settlement class members who do not request exclusion agree to release:

all claims, rights, demands, liabilities, penalties, fines, debts and causes of action of every nature and description, under state, federal, and local law, whether known or unknown, arising from or related to the claims pled in the Plaintiffs' complaints filed in the Action or that could have been pled based on the factual allegations in the operative complaint, in the Plaintiffs' original respective complaints, or in the Second Amended Class Action Complaint (Exhibit "A"), including but not limited to claims premised on alleged: unpaid wages, including any theory of piece-rate law, unpaid minimum wage, meal and rest period premiums, waiting time penalties, itemized wage statements, wages for unpaid time, other civil or statutory penalties related thereto, and any claim based on California Labor Code sections 201, 202, 203, 204, 226, 226.2, 226.3, 226.7, 510, 512, 1174(d) 1194, 1194.2, 1197, 2699 et seq., 5 7215717v1/015712 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 the Private Attorneys General Act of 2004, California Code of Regulations, Title 8 Section 11000 et

---

[4] The Agreement states litigation costs will not "exceeds twenty thousand dollars ($10,000)." (Agreement ¶ 28.) Based on the Agreement, therefore, it is not clear if litigation costs are authorized up to $10,000 or $20,000. Because the Preliminary Approval Motion also uses the $10,000 amount, the Court will assume that is the correct figure. (See Preliminary Approval Motion at 8.)

seq., the applicable Industrial Welfare Commission (IWC) Wage Orders, including 7- 2001, Business & Professions Code section 17200-17208 or any related damages, penalties, restitution, disgorgement, interest or attorneys' fees.

("Release").  (Agreement ¶ 18.)

**E.  Notice**

Within 30 days of this Order, Defendant will provide the Class List to the Settlement Administrator.  (Id. ¶ 36.)  No later than 10 days after receiving this information, Settlement Administrator will send the Notice to each class member via U.S. Mail.  (Id. ¶ 37.)  Before mailing, the Settlement Administrator will take reasonable measures to verify the last known addresses provided.  (Id. ¶ 38.)  Any Notice returned as undeliverable will be sent to the forwarding address.  (Id.)  If no forwarding address is available, the settlement administrator will perform a skip trace search and re-mail the Notice.  (Id.)  Class members who receive a re-mailed notice will have until the latter for (i) an additional 15 calendar days or (ii) the Response Deadline to object or request exclusion.  (Id.)

Each Notice Packet will include: (1) the Notice of Class Action Settlement, Change of Address form, and pre-printed return envelope, and provide information regarding the nature of the Actions, (2) a summary of the Agreement's principal terms, (3) the Settlement Class definition, (4) the Class Member's Individual Workweeks during the Class Period, (5) the Class Member's estimated Individual Settlement Payment and the formula for calculating Individual Settlement Payments, (6) the Class Period dates, (7) instructions on how to submit valid Requests for Exclusion or objections, (8) the deadlines by which the Class Member must fax or postmark a Request for Exclusions or file and serve objections to the Settlement, and (9) the claims to be released, as set forth in the Agreement.  (Id. ¶ 39.)

Any dispute regarding the number of weeks worked or a request for exclusion must be received by the Settlement Administrator by the Response Deadline, which is sixty days after the initial mailing.  (Id. ¶¶ 21, 40, 41, 45.)  The Response Deadline will be extended by fifteen days for Class Members who receive a re-mailed Notice.  (Id. ¶ 21.)  To object to the Agreement, a Class Member must file a Notice of Objection with the Court and serve copies of the objection on the parties before the Response Deadline.  (Id. ¶ 45.)

The Court notes that while the Agreement restricts the period within which class members may dispute the number of weeks worked, the Notice fails to inform class members regarding their right to submit such a dispute or the protocol for doing so effectively.  The Court ORDERS the parties to revise the Notice to include that information.

### VI.   PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  Hanlon, 150 F.3d at 1026.  To determine whether

a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions. Class Plaintiffs, 955 F.2d 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Scope of the Release

"A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action. . . ." Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) (internal quotation marks omitted) (emphasis added). Therefore, "[d]istrict courts in this Circuit have declined to approve settlement agreements where such agreements would release claims based on different facts than those alleged in the litigation at issue." Chavez v. PVH Corp., 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015)

Objectors argue that the proposed settlement must be denied because the Release is overbroad. (See Objection at 5–6.) While Plaintiff insists that the Release does not cover the claims asserted in Markson, he fails to address directly whether the Release is overbroad. (See Preliminary Approval Reply.) The Release can only cover those claims that were pled or could have been pled based on the facts alleged in the pleadings. Hadley v. Kellogg Sales Co., 2020 WL 836673, at *2 (N.D. Cal. Feb. 20, 2020) (quoting Hesse, 598 F.3d at 590)(holding that a release was overbroad where "the settlement release[d] claims that [were] not 'based on the identical factual predicate as that underlying the claims in the settled class action'"). However, the Release covers all claims that are "related to" claims pled in the SAC, which could be read to include claims that could not have been asserted in the SAC but have some logical relationship to claims asserted in the SAC. Accordingly, the Release as drafted is overbroad.

Plaintiff argues that the settlement agreement approved by this court in <u>Williams v. Western Express, Inc.</u>, Case No. EDCV 15-402 JGB (SPx) included nearly identical language. (Preliminary Approval Reply at 5.) However, the <u>Williams</u> settlement agreement did not include the "related to" language.[5] (<u>Williams v. Western Express, Inc.</u>, Case No. EDCV 15-402 JGB (SPx), Dkt. 55-1 at 3.) Moreover, no argument was made regarding overbreadth, so the Court did not conclude that the <u>Williams</u> release was not overbroad—it did not address the issue.

### B. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." <u>Acosta</u>, 243 F.R.D. at 396 (internal quotation marks omitted).

Plaintiff provides little information about the extent of the discovery conducted. It appears that Plaintiff's counsel (1) interviewed Plaintiff Rivera, (2) interviewed "several absent class members," (3) analyzed Plaintiff Rivera's payroll records, and (4) reviewed "robust shift, pay and class aggregated wage data." (Preliminary Approval Motion at 13–14.) Plaintiff fails to explain, however, why such a minimal review of Defendant's records was sufficient. A critical part of Plaintiff's theory of the case is that Defendant's policies encouraged class members to miss meal and rest breaks. But it is not clear to the Court how a review of "shift, pay, and class aggregated wage data" would allow Plaintiff to confirm whether that was the case. Accordingly, this factor weighs against approval.

### C. Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

Plaintiff argues that the biggest obstacle he would need to overcome to prevail is the Federal Motor Safety Administration ("FMSA") opinion issued in late 2018, which held that California meal and rest period laws were not applicable to California truck drivers. (Preliminary Approval Motion at 2, 12.) Additionally, Plaintiff asserts that even if he were to prevail at summary judgment, Defendant could argue that its policy was compliant with California's rest and meal break laws on its face—even if in practice drivers did not comply with the policy. (<u>Id.</u> at 12.)

The risk, expense, complexity, and likely duration of further litigation weigh in favor of preliminary approval. Without the Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges

---

[5] The released claims in <u>Williams</u> included: "any and all claims, rights, demands, and causes of action of every nature and description, including both known claims and Unknown Claims (as defined below), whether arising under federal, state or common law, whether class, representative, or individual in nature, that the Named Plaintiffs or any other Class Member: (i) asserted in the Litigation; or (ii) could have been asserted in the Litigation or in any other action or in any forum based on the alleged facts." (<u>Williams v. Western Express, Inc.</u>, Case No. EDCV 15-402 JGB (SPx), Dkt. 55-1 at 3.)

is long, complex, and expensive. If the settlement is not approved, Defendant will likely oppose class certification and conduct further motion practice to defend against Plaintiff's claims. Given both the FMSA decision and Defendant's potential defense, it is far from certain that Plaintiff would prevail. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing in favor of preliminary approval.

**D. Amount Offered in Settlement**

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

The net settlement amount is $636,200. (Hill Declaration ¶ 20.) With approximately 2,000 class members, the average recovery will be approximately $318. Plaintiff fails to identify the maximum potential recovery. Instead, he states only that "[t]he settlement amount is [] reasonable because this is a non-revisionary settlement." (Preliminary Approval Motion at 12.) Plaintiff appears to suggest that when a settlement is non-revisionary, this factor favors approval as a matter-of-law.

Plaintiff cites a single case from the Southern District of California in support of his proposition that the non-revisionary nature of the award makes it fair. (Preliminary Approval Motion at 12.) But nowhere in the cited case does the Southern District hold that the non-revisionary character of the settlement made it fair. See McGrath v. Wyndham Resort Dev. Corp., 2018 WL 637858, at *6 (S.D. Cal. Jan. 30, 2018). Instead, McGrath held only that "average payments estimated at $2,300.11" were appropriate "[i]n light of the risks Plaintiffs would face if the case progressed." Id. Not only does Plaintiff's argument lack legal support, it lacks a rational basis: whether a settlement amount is non-revisionary is irrelevant to whether the *amount* is fair.

Because Plaintiff fails to provide the Court with the maximum potential recovery, the Court looks to the notice of removal, in which the Defendant calculated damages that neared $40,000,000. (See Dkt. No. 1.) The gross settlement, therefore, is approximately 2.5% of the maximum damages arising out of the claims asserted in the FAC. Moreover, if the Court approves the settlement in this case and allows Plaintiff to amend the complaint, the named plaintiff in a related case against Defendant—Hutto, et al. v. Western Express, Inc., et al., Case No. 5:18-cv-01909 JGB (SHK)[6]—will dismiss her case and join this one. (Preliminary Approval Motion at 2.) Accordingly, the maximum potential recovery between the two cases could be even larger.

---

[6] There are two named plaintiffs in Hutto, et al. v. Western Express, Inc., et al. (Preliminary Approval Motion at 6.) One, Jacqulyn Hutto, will join as a named plaintiff in this case. (Id.) The other, John McDaniel, has entered into a separate, individual settlement with Defendant. (Id.)

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir.1982). However, where a settlement represents only 1/40 of the maximum potential recovery or less, Plaintiff must explain why such a huge discrepancy is justified. Because he has failed to do so, this factor weighs heavily against approval.

### E. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Class Counsel has experience serving as counsel in wage-and-hour class actions. (See Hill Declaration ¶¶ 3–7, 32.) While Plaintiff argues that "[d]eference to Class Counsel's evaluation of the settlement is appropriate" and spills much ink regarding Class Counsel's experience, he fails to state what Class Counsel's evaluation of the settlement is. The Court cannot assume that Class Counsel believes the settlement to be fair without any evidence to support that conclusion. This weighs against preliminary approval.

### F. Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961). Based on a cursory review of the facts presented, it does not appear that there was collusion between the parties.

First, the settlement negotiations were conducted at arms-length. The parties engaged in a mediation session with a mediator. (Hill Declaration ¶ 18.) The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. See, e.g., Satchell v. Fed Ex. Corp., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Second, the class representative awards appear potentially reasonable. The Agreement provides that both Plaintiff Rivera and proposed plaintiff Jacqulyn Hutto may request a service award of up to $10,000 each ($20,000 total). (Agreement ¶ 29.) A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities. See In re Mego Fin. Corp., 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the class representatives). Here, Plaintiff provides absolutely no detail concerning his or proposed plaintiff Hutto's involvement in this litigation. While this award does not suggest collusion on its face, the Court advises Plaintiff to provide robust detail of his and proposed plaintiff Hutto's involvement in the action and an estimate of the time they each spent pursuing their claims. See

Clesceri v. Beach City Investigations & Protective Servs., Inc., 2011 WL 320998, at *2, 9, 12 (C.D. Cal. Jan. 27, 2011) (preliminarily approving an incentive award of $3,000 each to the two named plaintiffs when the gross settlement amount was $100,000); Vanwagoner v. Siemens Indus., Inc., 2014 WL 1922731, at *2 (E.D. Cal. May 14, 2014) (preliminarily approving $5,000 as an incentive award when the maximum settlement amount was $225,000).

Third, the attorneys' fees award appears potentially reasonable. Plaintiff's counsel seeks up to $366,300 (or 30%) in attorneys' fees and up to $10,000 in costs. (Agreement ¶ 28.) Generally, courts find that a benchmark of 25% of the common fund is a reasonable fee award. Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Paul, Johnson, Alston & Hunt v. Graulty, 866 F.3d 258, 272 (9th Cir. 1989) (the 25% benchmark can be adjusted in either direction "to account for any unusual circumstances[,]" but the justification for adjustment must be apparent). The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). Plaintiff, however, does not offer a lodestar calculation. Like the class representative award, the proposed attorneys' fess amount does not suggest collusion on its face, but the Court requires more information for final approval.

Based on the arms-length negotiations and the size of the class representative awards and attorneys' fees, it appears that there was not collusion between the parties. This factor weighs in favor of approval.

More than one factor weighs against approval. Most concerning to the Court is the amount offered in settlement. Given the challenges Plaintiff may face going forward, the amount *could* be fair. However, Plaintiff must better explain why any obstacles presented by continued litigation justify the large discrepancy between the maximum recovery and the settlement amount before the Court will approve the settlement. Plaintiff must also provide additional details for each of the factors, explaining to the Court *why* each factor weighs in favor of settlement approval. Finally, the parties must revise the Agreement so that the Release comports with Ninth Circuit precedent and revise the Notice to inform class members of their right to dispute the number of weeks worked.

## VII. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Preliminary Approval and Defendant's Motion to Strike. Plaintiff is free to move again for preliminary approval with a revised release and additional information regarding the settlement.

**IT IS SO ORDERED.**