**COHELAN KHOURY & SINGER**
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
J. Jason Hill (SBN 179630)
jhill@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001/Facsimile: (619) 595-3000

**LEBE LAW APC**
Jonathan Lebe (SBN 284605)
jon@lebelaw.com
777 S. Alameda Street, Second Floor
Los Angeles, California 90021
Telephone: (213) 358-7046/Facsimile: (310) 820-1258

Attorneys for Plaintiffs Marc Rivera, on behalf of
himself and other similarly situated

*[Additional counsel listed on following page]*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARC RIVERA, individually and on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>WESTERN EXPRESS, INC., doing business as WESTERN EXPRESS TRANSPORT OF CALIFORNIA, INC., a Tennessee Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO. 5:18-cv-01633-JGB-SHK**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' <u>RENEWED</u> MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     November 23, 2020<br>Time:     9:00 a.m.<br>Ctrm:     1, 2nd Floor<br>Judge:    Hon. Jesus G. Bernal |

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

# TABLE OF CONENTS

**Page(s)**

I.    INTRODUCTION AND OVERVIEW OF PROPOSED SETTLEMENT ....1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................4

III.  SUMMARY OF SETTLEMENT TERMS ....................................................8

IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL.......................10

V.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..........12

   A.    Strengths and Weakness of Plaintiffs' Case – *Kullar* Valuation ........12

      1.    Minimum Wage Claims ................................................................14

      2.    Meal and Rest Period "Premium" Claims ..................................14

      3.    Derivative Claims (Wage Statements and Termination Pay).....14

      4.    PAGA Claims ...............................................................................16

      5.    Overall Valuation and Assessment .............................................16

   B.    The Amount Offered in the Settlement....................................................17

   C.    Risk of Continuing Litigation and Maintaining Class Status .............17

   D.    The Extent of Discovery and Experienced Views of Counsel ...........18

VI.   THIS COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND
      ENTER THE PRELIMINARY APPROVAL ORDER ...............................19

   A.    The Proposed Settlement Class Should be Certified ..........................19

   B.    The Class Satisfies Rule 23(a) Requirements for Numerosity,
         Commonality, Typicality and Adequacy Standards are Satisfied ......20

   C.    The Class Satisfies Rule 23(b)(3) ........................................................22

   D.    Class Action Is the Superior Mechanism for Adjudication ...............23

   E.    The Proposed Notice Program Constitutes Adequate Notice And
         Should Be Approved ...............................................................................24

VII.  CONCLUSION ...........................................................................................25

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

i

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

## <u>Cases</u>

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997)................................................................20, 23, 24

*Arnold v. United Artists Theatre Circuit, Inc.*
    158 F.R.D. 439 (N.D. Cal. 1994) ........................................................21

*Ayala v. U.S Xpress Enterprises, Inc.*
    2019 WL 1986760 (C.D. Cal. May 2, 2019)........................................6

*Boyd v. Bechtel Corp.*
    485 F. Supp. 610 (N.D. Cal. 1979)......................................................11

*Carrington v. Starbucks*
    30 Cal.App.5th 504 (2018) ................................................................16

*Churchill Village, LLC v. Gen. Elec.*
    361 F.3d 566 (9th Cir. 2004) ..............................................................12

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*
    2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ....................................17

*Dilts v. Penske Logistics, LLC*
    760 F.3d 637 (2014) ....................................................................5, 6, 17

*Fulford v. Logitech, Inc.*
    2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ...................18

*Garner v. State Farm. Mut. Auto. Ins. Co.*
    WL 1687832 (N.D. Cal. Apr. 22, 2010).............................................12

*Gen. Tel. Co. of the Sw. v. Falcon*
    457 U.S. 147 (1982)............................................................................21

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .........................................4, 11, 12, 21

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ..............................................................18

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

ii

*In re Netflix Privacy Litig.*
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................... 18

*In re Omnivision Techs., Inc.*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................. 19

*In re Syncor ERISA Litig.*
516 F.3d 1095 (9th Cir. 2008) ......................................................... 10

*In re Tableware Antitrust Litig.*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................... 10, 11

*McGrath v. Wyndham Resort Dev. Corp.*
2018 WL 637858 (S.D. Cal. Jan. 30, 2018) ..................................... 17

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982) ........................................................... 12

*Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*
390 U.S. 414 (1968) ........................................................................ 11

*Rodriguez v. West Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009) .............................................. 12, 17, 19

*Slaven v. BP Am., Inc.*
190 F.R.D. 649 (C.D. Cal. 2000) ..................................................... 20

*Stanton v. Boeing Company,*
327 F.3d 938 (9th Cir. 2003) ........................................................... 22

*Vaquero v. Stoneledge Furniture, LLC*
9 Cal.App.5th 98 (2017) .................................................................. 19

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011) ........................................................................ 20

*Zinser v. Accufix Research Inst., Inc.*
253 F.3d 1180 (9th Cir. 2001) ......................................................... 22

iii

Memorandum of Points and Authorities in Support of Plaintiff's <u>Renewed</u> Motion for Preliminary
Approval of Class Action Settlement Case No. 5:18-cv-01633-JGB-SHK

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

# STATUTES AND REGULATIONS

**PAGE**

*California Code of Civil Procedure*
    § 1542 ............................................................................................................. 10

*California Labor Code*
    § 201 ............................................................................................................... 10
    § 202 ............................................................................................................... 10
    § 203 .......................................................................................... 10, 14, 15, 16
    § 204 ............................................................................................................... 10
    § 210 ............................................................................................................... 10
    § 226. ............................................................................................ 14, 15, 16
    § 226(a). .......................................................................................................... 10
    § 226.2 ........................................................................................................ 2, 10
    § 226.3 ............................................................................................................ 10
    § 226.7 ........................................................................................................ 5, 14
    § 512 ................................................................................................................ 10
    § 1174(d) ........................................................................................................ 10
    § 1194 .............................................................................................................. 10
    § 1194.2 ........................................................................................................... 10
    § 1197 .............................................................................................................. 10
    § 2699, et seq. ...................................................................................... 10, 16

*Federal Rules of Civil Procedure*
    Rule 23 ............................................................................................................ 20
    Rule 23(a) ............................................................................................... 20, 22
    Rule 23(a)(1) .................................................................................................. 20
    Rule 23(a)(2) .................................................................................................. 20
    Rule 23(a)(3) .................................................................................................. 21
    Rule 23(a)(4) .................................................................................................. 22
    Rule 23(b) ............................................................................................... 20, 22
    Rule 23(b)(3) .......................................................................................... 22, 23, 24
    Rule 23(b)(3)(D) ............................................................................................ 24
    Rule 23(c)(2) .................................................................................................. 25
    Rule 23(c)(2)(B) ............................................................................................ 24
    Rule 23(e) ....................................................................................................... 25
    Rule 23(e)(1) .......................................................................................... 24, 25
    Rule 23(e)(2) .................................................................................................. 12
    Rule 26 .............................................................................................................. 5

Memorandum of Points and Authorities in Support of Plaintiff's <u>Renewed</u> Motion for Preliminary
Approval of Class Action Settlement Case No. 5:18-cv-01633-JGB-SHK

# MISCELLANEOUS AUTHORITIES

Manual for Complex Litigation (4th ed. 2004)
    § 21.312 ....................................................................................................... 10
    § 21.633 ....................................................................................................... 25

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro Before Trial
(The Rutter Group 2006)
    § 10:573 ....................................................................................................... 20

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

v

Memorandum of Points and Authorities in Support of Plaintiff's Renewed Motion for Preliminary
Approval of Class Action Settlement Case No. 5:18-cv-01633-JGB-SHK

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

## I. INTRODUCTION AND OVERVIEW OF PROPOSED SETTLEMENT

Plaintiffs MARC RIVERA and JACQUELYN HUTTO renew their earlier motion seeking preliminary approval of a proposed Second Amended Class Action Settlement Agreement, ("Settlement Agreement"), and to address specific issues raised by the Court in an earlier denial of this motion without prejudice. (Dkt No. 44.)

The parties have reached a revised settlement amount of $1,437,680.10 non-reversionary wage and hour class action and Private Attorney General Act ("PAGA") settlement on behalf of an estimated 2,100 drivers employed by Defendant WESTERN EXPRESS, INC., a Tennessee corporation, doing business as WESTERN EXPRESS TRANSPORT OF CALIFORNIA, INC. ("Defendant") from October 26, 2016 through October 31, 2020.[1] Declaration of J. Jason Hill, ("Hill Decl."), ¶9.

As part of the settlement JACQULYN HUTTO joins MARC RIVERA as an additional Class Representative Named Plaintiff based on a proposed Second Amended Class Action Complaint, which will ultimately result in the dismissal of a related case pending before this Court in *Hutto, et al. v. Western Express, Inc., et al.,* U.S.D.C. Case No. 5:18-cv-01909-JGB (SHK).[2] Hill Decl. ¶10. For purposes of settlement only, the Class Members are defined as follows:

> "All current and former hourly non-exempt drivers in residing in the State of California at any time during the period from October 26, 2016 to October 31, 2020."[3] Hill Decl. ¶12.

---

[1] The shortened class period is a result of an earlier settlement in *Williams v. Western Express, Inc.,* Case No. EDCV 15-402 JGB (SPx) which was approved on February 17, 2017 (Dckt. No. 80) A copy of the fully executed *Rivera* Settlement Agreement is attached to the Hill Declaration as **Exhibit 1.**

[2] The proposed Second Amended Class Action Complaint adding HUTTO as a co-representative Plaintiff with Mr. Rivera is attached to the Settlement Agreement as **Exhibit A.** Hill Decl. ¶10.

[3] The PAGA Settlement Class is the same group of drivers, but with a PAGA Period from October 26, 2017 to October 31 to reflect PAGA's one-year statute of limitations period. The Class Period was lengthened and a pro-rata share of the settlement escalated due to the passage of time and issues related to Covid, and the fact that Defendant's headquarters in Nashville, TN, was substantially damaged by

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

To address the Court's earlier denial of preliminary approval in *Rivera*, the parties revised the Joint Stipulation of Settlement to do the following:

1) Revises the class release to specifically exclude the claims raised in *Markson v. Western Express, Inc.*, Case No. 5:17-cv-01261-FMO-SPx, who objected to the earlier settlement as to the breadth of the release (Dkt. No. 29);[4]

2) Provides an expansive assessment of *Kullar* exposure and more specific discussion of valuation and basis for settlement amount; and

3) Increases the Gross Settlement Amount by $337,680.10 to move the covered Class Period on a pro-rata basis to end the Class Period on October 31, 2020 rather than the earlier date of January 13, 2020.

The primary factual basis for the class and PAGA claims arose from Labor Code section 226.2 where the California Legislature allowed a potential "safe harbor" for employers who paid employees a piece-rate (or as here, by-the-mile) and thus did not account for paid 10-minute rest periods as required by Industrial Welfare Commission (IWC) Wage Order 9, section 12. See, *Gonzalez v Downtown LA Motors, LP*, 215 Cal.App.4th 36 (2013) (*Gonzales*) and *Bluford v Safeway Inc.* (2013) 216 Cal.App.4th 864 (*Bluford*) [holding that task-based or piece-rate compensation formula that does not compensate separately for rest periods does not comply with California minimum wage law.]

After an earlier settlement in the *Williams* matter (giving rise to the same issues) *Rivera* alleged that WESTERN EXPRESS still did not comply with providing 10-minute paid rest periods and had missed the legislatively implemented "safe harbor" outlined in Labor Code section 226.2.

During the pendency of the *Rivera* case, the Federal Motor Safety

---

a tornado earlier this year, making certain data requests and calculations more difficult. This added $337,680.10 to the GSA to a total of 1,147680.10, up from the initial gross settlement amount of $1,100,000

[4] The parties in *Markson* have reviewed the revised release and have withdrawn their objections to the settlement. Hill Decl. ¶11.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Administration (FMCSA) issued a new opinion that interstate drivers were not subject to California meal and rest period laws, changing a previous contrary opinion as of December 28, 2018. This administrative change placed the entire action and any recovery for the proposed class on perilous footing, and in fact, has resulted in several summary judgment findings and resulting appeals now pending before the Ninth Circuit.  Defendant also raised separate defenses, including that "rest periods" may be waived by drivers, the California Labor Code may not apply to Plaintiffs and the class at all, and defenses of extra-territorial application of California law against non-California employers. Many of these issues are pending before the California Supreme Court and Ninth Circuit.

Nevertheless, the parties agreed to try to resolve in good faith in order to avoid active litigation and potential appeals, and scheduled a mediation with Lynn Frank in early July 2019. Due to unforeseen circumstances, that mediation was postponed and the parties rescheduled a mediation with Justice Jeffrey King (Ret.) of JAMS on September 12, 2019. At that time, after a full-day of arms-length negotiations, the parties reached a tentative class action settlement that after a few amendments and modifications, is proffered to this Court for preliminary approval.

If approved, the Settlement will bring an end to what would continue to be, highly contentious and costly litigation centered upon unsettled legal questions. Moreover, with the addition of HUTTO as a co-Plaintiff in the *Rivera* action, the later filed *Hutto* action will be ultimately dismissed from this Court's docket. Therefore, this Motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Permit the filing of the Proposed Second Amended Class Action Complaint (for settlement purposes, adding HUTTO as an additional Plaintiff and class representative and deeming Defendant's Answer responsive);

3. Preliminary certification of a Settlement Class and appointment of the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

- 3 -

4. Approval of the Settlement and Notice Administrator;

5. Approval of the Notice program describing:

   a. The Settlement and the Settlement Class members' rights with respect to the Settlement;

   b. The proposed release of claims;

   c. Class Counsel's request for attorneys' fees and expenses, as well as an Incentive Award for the Class Representatives; and

   d. The procedure for opting-out of or objecting to the Settlement;

6. Approval of the Claims process; and

7. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

Given the changes by the FMCSA and continued uncertainty about the legality and the potential retroactivity of the December 28, 2018 agency opinion, the parties believe this settlement meets all the necessary criteria for preliminary certification of the proposed settlement class and PAGA class. The class members will receive a settlement payout based upon shifts and pay periods during the operative class period unless they exclude themselves from participation in the settlement. Since class members are drivers (whether current or former employees of Defendant) and constantly engaged in travel, often times interstate, this process and the pay-out distribution process is fair and reasonable. Given a prospective risk of an an "all or nothing" outcome, including delays by any appellate practice, the recovery amount is also fair and reasonable under the circumstances. See, e.g., *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 2018, plaintiff MARC RIVERA ("Rivera") filed a putative class action complaint in San Bernardino Superior Court alleging that Defendant WESTERN EXPRESS, INC. ("Defendant" or "WEX") implemented and maintained pay plan  that did not pay all minimum wages for all "hours worked," failed to provide compliant meal and rest periods, and derivative claims for

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 4 -

1   untimely final pay for formerly employed drivers, inaccurate wage statements and

2   violation of California's Unfair Competition Law (UCL). Hill Dec. ¶13.

3       On June 26, 2018, Plaintiff filed a First Amended Complaint (FAC) adding

4   claims for civil penalties arising under the Private Attorney General Act ("PAGA")

5   based on the same or similar underlying wage and hour allegations. The lynch-pin

6   of the case was that Defendant still paid by a piece-rate or by-the-mile method of

7   pay that failed to allow for paid 10-minute rest periods for at least the applicable

8   minimum wage for shifts in California, and that the pay-plan in general

9   discouraged and dis-incentivized drivers from taking unpaid off-duty 30-minute

10  meal periods since any "down-time" meant the driver was not being paid.

11  Defendant answered the FAC and then removed the action to this Court on or

12  about August 3, 2018. (ECF No. 1).[5] Hill Dec. ¶14.

13      Early on, the parties conferred for Rule 26 Disclosures, document exchange

14  and then Plaintiffs served initial sets of written discovery on or about September

15  20, 2018. (Discovery was served earlier before removal but withdrawn after

16  removal). In terms of investigation and discovery, Plaintiff's counsel had access to

17  all of Rivera's pay records and employment file, and had access to names and

18  contacts of approximately 10-12 other WEX drivers who consistently verified the

19  common pay plan, the unpaid (and untaken) rest periods and the disincentive for

20  drivers to take any rest or meal periods. During this investigation, Plaintiff's

21  counsel concluded that while WEX had facially compliant meal and rest period

22  written policies, the pay structure, especially for rest periods, continued to violate

23  IWC Wage Order 9, section 12, Labor Code section 226.7 as well as the holdings

24  in *Gonzales* and *Bluford*.[6] Just as the parties were negotiating a possible privacy

---

[5] In the interim, the related case, *Hutto, et al. v. Western Express, Inc., et al.*, U.S.D.C. Case No. 5:18-cv-01909-JGB (SHK) was filed in state court on August 8, 2018 and removed to this Court or September 9, 2018.

[6] It is worthy to note that the Department of Transportation in *Dilts* filed *amicus* briefing and actually presented argument to the Ninth Circuit panel taking the position 180-degrees contrary to the December 28, 2018 opinion by the FMCSA,

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

opt-out notice to obtain proposed class contact data, Rivera's counsel was advised of the related-case in *Hutto* and by early December 2018, the parties were in talks to consider early mediation. Hill Dec. ¶15.

On December 28, 2018, Plaintiff's counsel learned of the Federal Register's publication of the FMCSA opinion, which was at odds with holding in *Dilts v. Penske Logistics, LLC*, 760 F.3d 637 (2014) (cert. denied on May 4, 2015) [holding that California meal and rest period laws were not preempted for primarily intra-state driver routes.] Over the next few months, employers were utilizing the FMCSA opinion to dismiss and obtained summary judgment/adjudication of meal and rest period violation claims against driver employees. Since that time, there have been several district court dismissals and resulting appeals to the Ninth Circuit. (See, *Ayala v. U.S Xpress Enterprises, Inc*., 2019 WL 1986760 (C.D. Cal. May 2, 2019) [summary adjudication granted]; and see, *IBT v. FMCSA*, consolidated appeal, CASE NOS. 18-73488, 19-70323, 19-70329, 19-70413, pending decision by the Ninth Circuit Court of Appeals.)

Consequently, the parties conferred on the matter and in late February 2019, agreed to exchange robust mediation data and to mediate the case with Lynn Frank, whose first workable date was July 9. 2019. Due to unforeseen illness of Defendant's principal, the mediation did not take place and was rescheduled with Justice Jeffrey King (Ret.) at JAMS in Ontario California on or about September 12, 2019 and resulted in a detailed Memorandum of Understanding of a proposed and tentative class action settlement. Hill Dec. ¶17.

Thereafter, counsel for Rivera also reached out to counsel for Ms. Hutto to hopefully bring their case within the *Rivera* matter, and in November 2019, each agreed to a Joint Prosecution Agreement that was consented to by both Rivera and

urging the Ninth Circuit to apply California meal and rest period requirement to drivers whose shifts and routes were primarily intrastate. Hill Dec. ¶16.

Hutto, as well as all counsel.[7] The parties prepared a proposed Second Amended Complaint in *Rivera* to add Ms. Hutto as a co-Plaintiff to serve as the operative pleading for settlement purposes. All claims and causes of action remain the same as the *Rivera* FAC, with the exception of the addition of Hutto as a proposed class representative. Hill Decl. ¶18.

On February 26, 2020, Plaintiffs moved for preliminary approval. (Dkt. No. 28) During the pendency of that motion, a potential objector notified the parties and the Court that the initial release of class claims might impact and subjugate other claims. (Dkt. No. 29.) Based in part on the potential overlap with *Markson* and for uncertainty of Plaintiffs' initial *Kullar* exposure analysis, the Court denied preliminary approval without prejudice. (Dkt. No. 44.). Hill Decl. ¶19.

Following the initial denial, the parties revised the class release to carve-out any claims made in *Markson* and agreed, due to passage of time and uncertainties of both Covid as well as tornado damage to Western Express's headquarters in Nashville, agreed to extend class period with a pro-rata share increase to account for another approximately 300 class members and approximately 11,000 additional workweeks. The current proposed Class Period cut-off is October 31, 2020. Hill Decl. ¶20. The Amended Joint Stipulation for Class Action Settlement still results in the same proposed payout from the earlier motion, but with a narrowed class release, exclusion of the *Markson* case, but still the same group of drivers and claims as in the initial preliminary approval motion. Hill Decl. ¶21. Plaintiffs also now have greater granularity of data to identify valuation issues faced by the class, including the fact that despite a high shift or workweek count, over 66% of shifts that may have originated or terminated in California were performed primarily out of state, thus making extra-territorial reach of California law attenuated. Hill Decl.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

---

[7]The other co-Plaintiff in the *Hutto* matter (John McDaniel) has since entered into a confidential individual settlement agreement because he was not a California-based driver employed by WEX, as a result, McDaniel is not part of the proposed settlement class.

¶22.

## III.    SUMMARY OF SETTLEMENT TERMS

The proposed settlement, as indicated above, results in a complete resolution of this action and will result, if approved, in the dismissal of the related case in *Hutto*. The Gross Settlement Amount (GSA) is revised to reflect additional potential class members and workweek from the initial amount of $1,100,000 to an escalated value of $1,437,680.10. Hill Decl. ¶23.

Plaintiffs will allocate the settlement amount as between shifts involving time driven in California and those involving time driver outside of California. As a result of this settlement, and any of the attorneys' fees, costs, administrative fees, PAGA allotment, and class representative enhancements, shall be paid from this amount. Defendant shall pay all employer-side payroll taxes outside the Gross Settlement Amount. There will be no claims process. The GSA is all-in and non-reversionary, each class member will automatically receive payment of their settlement share unless they timely exclude themselves from the settlement. The proposed class size is estimated at over 2,300 drivers, comprising of approximately 48,259 workweeks as of the date of mediation.[8] Hill Decl. ¶24. The additional substantive terms are as follows:

- Out of the GSA, the Parties agree to allocate $50,000 to represent all penalties under the Private Attorneys General Act of 2004 ("PAGA"). Of the PAGA allotment, the Parties agree that seventy-five percent (75%), i.e. $37,500, will be made payable to the State of California via the Labor Workforce and Development Agency, and the remaining twenty-five percent (25%), i.e. $12,500, will be distributed among all putative class members in the PAGA statute of limitations who do not validly opt-out of the settlement who worked during the Settlement PAGA Period. (Settlement Agreement at ¶31.) *Because proposed Class Counsel seeks to provide maximum benefit to the class, the proposed PAGA portion of the settlement was not increased.  This is based on information provided by*

---

[8]Plaintiffs' counsel will supplement this motion with additional workweek and shift data prior to hearing on the motion if there is deviation from the amounts. Defendant is working in good faith, and the final numbers will be submitted to the Court in advance of the hearing date, if necessary. Hill Decl. ¶25.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

*the LWDA that they generally do not intervene or object as long as the wage/hour/interest portion of a settlement with employees is well-reasoned.* Hill Decl. ¶26. Counsel is prepared to increase the amount, if the Court is of the opinion to do so.

- Plaintiffs' counsel shall seek up to $10,000.00 for each Class Representative, Rivera and Hutto as a service award out of the GSA without opposition and subject to Court approval. (Settlement Agreement at ¶¶8, 32.)

- Plaintiffs' counsel shall seek *up to* 30% ($431,300) of the GSA as an award for attorneys' fees, without objection by WEX and subject to Court Approval at the time of final approval. (Settlement Agreement at ¶¶4, 31.) *Plaintiffs' counsel acknowledges that a lesser amount may be sought under Court guidelines.*

- Plaintiffs' Counsel estimate litigation costs cost through final approval will be approximately $10,000 (subject to further information) that will come from the GSA without opposition and subject to court approval. (Settlement Agreement at ¶¶4, 31.)

- Plaintiffs anticipate based on initial estimates that administrative costs will be up to $30,000 (subject to further information) that will be deducted from the GSA. (Settlement Agreement at ¶33.)

- Any uncashed checks over 120 days after distribution (and absent class member seeking a new check from administrator) shall either be distributed to a *cy pres* mutually agreeable to the parties, *or alternatively*, if there is a lesser administrative cost, sent in the name of the class member to the State of California Controller Office for Unclaimed Property Fund. (Settlement Agreement at ¶51.)

- The payments made to the Class Members shall be classified as 20% taxable wages and 80% to non-taxable penalties and interest. Defendant shall pay all employer-side payroll taxes for the amounts attributed to wages outside and in addition to the Gross Settlement Amount. (Settlement Agreement at ¶52.)

- The Release for the Class shall include that as of the Release Date, all Class Members release all state and wage claims against Defendant, and its present and former parents, subsidiaries, co- employers, and each of their respective present and former owners, boards, directors, officers, trustees, shareholders, members, partners, employees, agents, attorneys, representatives, successors and assigns, and present and former parents, subsidiaries, affiliated and related parties, and each of them (including

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 9 -

but not limited to Clarence Easterday), of any and all claims, debts, liabilities, demands, actions, or causes of actions of every nature and description that were alleged or that reasonably could have been alleged based on the factual allegations contained in the operative Complaint (the "Complaint") on file with this court including, but not limited to, claims pursuant to Labor Code sections, 201, 202, 203, 204, 210, 226(a), 226.2, 226.3, 512, 1174(d), 1194, 1194.2, 1197, 2699 et seq, and also unpaid wages, including under any theory of piece-rate law, unpaid minimum wage, meal and rest period violations, waiting time penalties, itemized wage statement penalties, wages for unpaid time, other civil or statutory penalties, attorneys' fees, and/or costs and all claims under the Private Attorneys General Act of 2004, and the Unfair Competition Law, alleged in the operative complaint within the Class Period (the "Claims"). The settlement also contemplates that Plaintiffs Rivera and Hutto, in consideration for receipt of an enhanced award, will execute a general release of any and all claims, including Claims in the Complaint that includes a waiver of California Civil Code section 1542.  Class claims will be subject to the claims made in the operative pleading or that could have been made based on the operative facts alleged. (Settlement Agreement at ¶¶18, 19, 58.)  Based on the Court's prior ruling, the class release specifically excludes claims raised in the *Markson* action.

- Defendant may revoke the Settlement at their discretion if 2.5% or more of the proposed Settlement Class exclude themselves or opt-out of participation in the settlement. (Settlement Agreement at ¶47.)

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

Approval of class action settlements involves a two-step process. First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). If so, notice can be sent to class members and the Court can schedule a final approval hearing. *See Manual for Complex Litigation*, § 21.312 at 293-96 (4th ed. 2004) (hereinafter "*Manual*").

The purpose of a preliminary approval hearing is to ascertain whether to send out notice to putative class members and proceed with a fairness hearing. *See*

- 10 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Notice should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id*. Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class. *Id.*  Assent or dissent by class members can be a guide for the parties in terms of the reasonableness of the settlement.

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Here, the negotiations were conducted with assistance of a former California Appellate Court Judge, were non-collusive and were well-informed. Under such circumstances, the Court is entitled to rely upon the opinions and assessments of counsel that the settlement is fair and reasonable. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

The principal evaluation of the fairness and adequacy of a proposed class settlement is the likelihood of recovery balanced against the benefits of settlement. "Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

- 11 -

concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

## V.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." When making this determination, the Ninth Circuit has instructed district courts to balance several factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon*, 150 F.3d at 1026;[9] *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, the balance of these factors establishes that the Settlement should be preliminarily approved.

### A.   Strengths and Weaknesses of Plaintiffs' Case – *Kullar* Valuation

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Here, the settlement negotiations were at arm's length and brokered by a former Justice of the California Court of Appeal.

Plaintiff Rivera initiated this action with confidence that WEX's pay plan

---

[9]In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval, and will be addressed at the appropriate time.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 12 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

was common and subject to class wide proof, especially in light of the prior similar settlement in *Williams* that raised identical issues. However, in the aftermath of the FMCSA opinion in late 2018, Plaintiffs' counsel reconsidered whether a recovery would be had at all, given the changed landscape vis-à-vis application of California meal and rest period requirements on California drivers. Even if Plaintiffs prevailed over a potential summary judgment, a common defense to both certification and damages is WEX's argument that they have facially compliant meal and rest policies and if drivers chose to disobey those policies, that it either creates too many potential individualized issues and in a damages phase, assuming a certified class, the trier of fact could conclude that the losses were not that significant. Hill Decl. ¶¶27-29. Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with meaningful relief versus a prolonged and very uncertain outcome. The Settlement avoids substantial risk preventing recovery of *any* relief.

The proposed Second Amended Complaint, adding Ms. Hutto, entails 11 causes of action, all premised on the common issue of whether the mileage piece rate system of pay conformed with California law following *Bluford* and *Gonzales*. The main claim is that 10-minute rest periods were unpaid separately and that meal breaks, though provided through policy, were generally not taken Rest breaks and in some cases meal periods can be waived, so despite a common policy on pay, deriving a damage assessment even if liability and class certification were determined, was expected to be problematic and difficult to manage.

Aside from the scope of release issue raised by *Markson's* counsel, the Court's primary issue with the initial motion for preliminary approval focused on the lack of clarity on the claim valuation and discount valuation. (Dkt. No. 44 at pp. 13.)  Here, Plaintiff seeks to clarify and put proper evaluation on each claim.

///

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

**(1) Minimum Wage Claims:**  Here the main claim includes approximately 2,100 California-based drivers and 48,259 workweeks. The claim is premised upon ten-minute unpaid rest periods where, based on allegations, were not paid at least as California's minimum wage. Assuming a combined average of $11.50 per hour during the Class period equals .16 x $11.50 (MW) or $1.91 per day that a violation occurred.  Most drivers worked at least 3 days per workweek, with two-thirds of the time *outside of California*.  Assuming at least one day in California and eligible for a rest break and 100% non-compliance equals $91,174 owed in unpaid minimum wages for shifts in California that at least one rest period was not paid at minimum wage. Assuming that a full 8-hours was worked in California (thus necessitating a second rest period) then the valuation of this unpaid MW claim is **$184,349** maximum valuation, less interest, penalties or liquidated damages. Hill Decl. ¶30.

**(2) Meal and Rest Period "Premium" Claims (One hour of Pay):** These claims are purely premised on California law and again, since only one-third of workweeks were intrastate (versus interstate) travel, the same logic applies, but the amount is the meal and rest period "one-hour premium" pay at issue.  Similar to the MW claim, assuming at least an aggregate wage during the class period as being at least $11.50 per hour (under CA law) and assuming at least one full shift of 8 hours within California per workweek, would equal $554,978 for a rest period premium and if a meal period was not taken, then another $554,978 for premiums under Labor Code section 226.7 and applicable IWC Wage Orders. Therefore, the outside maximum valuation for this claim for CA-based shifts would be approximately **$1,109,957**. Hill Decl. ¶31.

**(3) Derivative Claims (Wage Statements and Termination Pay):** These claims arise under Labor Code sections 226 and 203.  On the one hand, the wage statement claim is limited to a one-year statute of limitation while the separation/termination pay is based on a three-year statute of limitations.  Given

the earlier *Williams* Settlement the latter is limited to former employees (though there is a high turnover rate in the trucking industry) and the wage statement claim. Hill Decl. ¶32.

Both claims require willfulness and knowledge of wrongful conduct, which is undermined by the change of the FMCSA opinion in December 2018. Accordingly, the valuation assessment of these claims is limited as Western Express has a right to rely in good faith on a federal agency decision issued on December 28, 2018. With that in mind, compliance with CA local law would at least after that time require a finding that would be almost impossible to show, i.e., that Western Express knew the FMSCA opinion was wrong and knowingly violated California law on wage statements and termination pay. There is an argument that from the date of the *Williams* settlement on October 24, 2016 until December 28, 2018 that Western Express may have failed to comply with CA law under Labor Code sections 226 and 203. With that in mind, the initial filing of this case was May 15, 2018 and could only look back until October 25, 2016 due to the release and settlement in *Williams*. Given information as to the total full-time employee drivers based on California, there would be potentially 525 employees eligible for wage statement violations during the one-year limitation period before the FMVSA opinion and an estimated 900 terminated or separated employees within the three-year limitations period of Labor Code section 203.

Assuming maximum value (capped at $4,000 per eligible employee) for wage statement violations, the absolute maximum possible claim valuation under Labor Code section 226 is **$2,100,000.** (525 x. $4k = $2,100,00) during that time period, and that assumes every workweek/pay period included intra-state California driving shifts. Similarly, assuming 900 California-based drivers separated from employment from October 25, 2016 to December 28, 2018 and had at least some workweeks where MW or CA Meal/Rest premiums were unpaid, the maximum amount of exposure is $2,484,000, based on the assumption that the

- 15 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

statutory penalty under Labor Code section 203 covers a full 30-days pay at MW, multiplied by 8 hours per day, even if two-thirds of the time the drivers were extraterritorial and outside the scope of California law.  Because that amount is not realistic under the circumstances, the real exposure as estimated by counsel is only one-third of that amount, or **$827,172.** Hill Decl. ¶33.

**(4) PAGA Claims:** Similar to the statutory penalty claims under Labor Code sections 203 and 226, there is an element of scienter to Defendant's conduct that likely is abrogated following the FMCSA opinion change in December 2018. Further, Labor Code section 2699 specifically grants the Court the ability to reduce or eliminate any civil penalty that is deemed punitive of confiscatory under the circumstances. Case in point is *Carrington v. Starbucks*, 30 Cal.App.5th 504 (2018), where there was a technical violation but the number of pay periods (which is how PAGA civil penalties are assessed) and violations demonstrated nearly $25 Million in assessments, but the court reduced the amount to a civil penalty total assessment after trial as only $150,000. The court's discretion was upheld by California's Fourth District Court of Appeal. Also, similar to the wage statement claims, all PAGA penalty assessments are limited to a one-year statute of limitations.

Here, using the same limiting principles of *Carrington* and the one-year limitations period, Plaintiff's counsel determined that the only eligible pay periods for PAGA civil penalties was from May 5, 2017 until December 28, 2018, or 1.6 years. Assuming from May 5, 2017 to December 28, 2018 (date of the FMCSA opinion letter) there were approximately 18,000 pay periods eligible for PAGA civil penalties at $100 per pay period would yield **$1,800,000** in assessments, subject to court approval and potentially substantial reductions pursuant Labor Code section 2699. Hill Decl. ¶34.

**(5) Overall Valuation and Assessment**:  Given the above assessment, the reasonable outcome of this case, assuming certification, assuming victory over

- 16 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

some very able defenses, some of which are based on governmental actions protective of the trucking industry, and considering limitations periods and maximum exposures, counsel herein estimates that the best-case scenario valuation is **$6,021,478** without interest or attorneys' fees.  Given the defenses and hurdles to certification, whether as to intra-state versus inter-state shifts, manageability of damages, the possibility of individual waiver (decided not to take meal or rest breaks) and the sea-change of the FMCSA opinion departing from *Dilts*, a resolution at **$1,437,000** is fair and reasonable and will work out to an average of each class member receiving a gross recovery of **$29.77** per workweek, and a net recovery of **$19.89** per workweek on what is now a tenuous claim.  Because this is a high-turnover industry, the usual tenure for a driver is around 12 months (52 workweeks) on average. This results in a likely average gross settlement payout of **$1,548** for a typical driver **or net settlement payout average of $1,034** for a typical WEX driver. Hill Decl. ¶35.

### B.   The Amount Offered in the Settlement

The settlement amount is also reasonable because this is a non-reversionary settlement. *See McGrath v. Wyndham Resort Dev. Corp.*, No. 15CV1631 JM (KSC), 2018 WL 637858, at *6 (S.D. Cal. Jan. 30, 2018) (finding a non-reversionary settlement fund to be "fair, reasonable, and adequate."). Further, each member will receive a payout unless they wish to excluded themselves and preserve their right to individual actions if they desire.

### C.   Risk of Continuing Litigation and Maintaining Class Status

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity,

- 17 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even if Plaintiffs are able to certify a class, there is also a risk that the Court could later decertify the class action. *See In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). The Settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery … at all." *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MNC, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010). In contested certification motions regarding meal and rest periods, gaining full certification is always a challenging prospect and usually later subject to attack by defendants who then devote extraordinary resourced to then later decertify the class. This risk was assessed during the course of this case and negotiations.

### D.    The Extent of Discovery and Experienced Views of Counsel

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Between multiple interviews with the clients and several absent class members, client payroll records analysis and robust shift, pay and class aggregated wage data supplied for mediation purposes, the parties were well prepared to discuss the legal issues, certification prospects and the considerable unknown prospect about whether the FMCSA opinion would derail the case and cause potentially years of delay while the Ninth Circuit sorts out various pending appeals on the renewed preemption issue. Hill Decl. ¶37.

Similarly, the efficiency achieved was a direct by-product of the experience of counsel, as both Plaintiffs' counsel and Defense are well acquainted with prosecuting and defending class cases involving meal and rest periods involving

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 18 -

driver pay. Hill Decl. ¶¶3-8, 38-39. Moreover, the *Bluford* decision in favor of the employee drivers was initially unpublished, but CKS filed a request for publication on behalf of the California Employment Lawyers Association (CELA) along with others in May 2013, which resulted in a partial publication order. CKS was also counsel of record related to unpaid rest periods in *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98 (2017) that expanded *Gonzales* and *Bluford's* holdings to commissioned sales employees for paid rest periods. Hill Decl. ¶40. Because of this involved history, Defendant and their counsel, despite the FMCSA opinion, reached a good faith (with Defendant's corporate representative and principle, Mr. Easterday) to negotiate a fair and reasonable resolution.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, *supra*, 563 F.3d at 967. Based on their experience, Class Counsel concluded that the Settlement was achieved in part, because of this experience and dedication to promoting and preserving employee rights. WEX, particularly after the FMCSA opinion change, could easily walk away from settlement negotiation and sought summary judgment. Knowing the uncertainties of continued litigation and likely appeal, WEX negotiated in good faith and in fact agreed to escalation of the GSA to account for the passage of time that no one anticipated. These facts strongly indicate that the proposed settlement should be preliminarily approved.

## VI.   THIS COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND ENTER THE PRELIMINARY APPROVAL ORDER

### A.   The Proposed Settlement Class Should be Certified

Plaintiffs need only make a "prima facie showing" of the requirements under

- 19 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Rule 23 to support a proposed class action settlement. *See,* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro Before Trial § 10:573 (The Rutter Group 2006). When presented with a proposed class settlement, a court must first determine whether the proposed settlement class minimally satisfies the requirements for class certification under Rule 23. In assessing those class certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Here, the court previously found that settlement of the class claims meets requirements of Rule 23(a) and (b).  (Dkt. No. 44, but having other issues with the earlier filed preliminary approval motion.)

**B.     The Class Satisfies Rule 23(a) Requirements for Numerosity, Commonality, Typicality and Adequacy Standards are Satisfied.**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." *See* Rule 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here, the proposed Class is comprised of likely over 2,300 drivers – a number that satisfies the numerosity requirement.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." *See* Rule 23(a)(2). Commonality is established if plaintiffs and class members' claims "depend on a common contention," "capable of class-wide resolution … [meaning] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

There are ample issues of both law and fact presented that are common to the members of the Class. All of the Class Members' claims arise from a common

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 20 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

pay plan that has been found subject to certification in most California courts as it relates to "piece-rate" pay or "mileage' pay and have found that absent some mechanism to pay for rest periods at the applicable minimum wage is the result of a uniform practice capable of class wide resolution. Similarly, as to the meal period claims, despite asserted lawful policies by WEX, there is an incentive to keep driving (and get paid) that overrides the driver's desire for taking a break period. This is a common question of fact. *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).

Second, Plaintiffs' claims are brought under legal theories common to the Class as a whole. Alleging a common legal theory alone is enough to establish commonality. *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, all of the legal theories asserted by Plaintiffs are common to all Class Members based on Defendant's pay policies, and while damages may vary, among class members, common issues of law predominate.

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims … of the class." *See* Rule 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020. In short, to meet the typicality requirement, the representative plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Here, the Plaintiffs' claims are typical of those of the Class. Their claims arise from a common piece-rate pay plan that emphasizes productivity more than the health and safety concerns that are otherwise at issue both to the drivers and the

driving public. The named Plaintiffs possess the same claims as the Class and share a common bond as to Defendant's course of conduct.

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class." *See* Rule 23(a)(4). A plaintiff will adequately represent the class where: (1) plaintiffs and their counsel do not have conflicts of interests with other class members; and (2) where plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Proposed Class Counsel declarations establish a proven track record on enforcing employee rights. The arm's-length settlement negotiations that took place and the investigation undertaken demonstrate that Class Counsel adequately represents the Class. Moreover, the named Plaintiffs and Class Counsel have no conflicts of interests with the Class. Rather, the named Plaintiffs, like each absent Class Member, have a strong interest in proving WEX's productivity pay plan was a common and uniform course of conduct, and each have the same interesting in obtaining redress. In pursing this litigation, *See* Hill Decl. ¶¶3-8, 38, 39, 41.

As indicated above, the Court previously indicated that Rule 23(a) and 23(b) requirements were satisfied for settlement purposes, but had concerns on the potential release overlap with the *Markson* case and trouble with the assess exposure versus the settlement valuation analysis. (Dkt. No. 44 at pp. 4-7). Accordingly, Rule 23(a)(4) is satisfied.

## C. The Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Rule 23(b)(3) and *Hanlon*, 150 F.3d at 1022.

The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Id.* When addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 619-620.

Aside from individual damages, common questions of law and fact exist and predominate over any individual questions, including, in addition to whether this settlement is reasonable. (*See Hanlon*, 150 F.3d at 1026-27). The driving force presented here is (1) whether WEX's pay plan for drivers in California paid them at least minimum wages for 10-minute paid rest periods for qualifying shifts; (2) whether WEX ever paid meal and period premiums for drivers who spent qualifying time within California borders; and (3) whether, as result of these pay policies and practices resulted in inaccurate pay statements provided to drivers by WEX; and/or whether former employee drivers in California were paid all wages owed in a timely fashion upon their separation  or termination. If the Class has been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution under the UCL.

### D.   Class Action Is the Superior Mechanism for Adjudication

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and supervision by a single court.

Moreover, assuming preliminary approval of the settlement and the class notice, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Here, Defendant will provide last known contact data to a third-party administrator (CPT Group, Inc. is proposed) so each member will receive mailed notice of the settlement terms and instructions, and as part of administration process, the administrator will seek out any updated or non-delivered mailing and re-mail to any available updated addresses. Distribution formula will be divided based on number of shifts, workweeks or pay periods that will also be provided to the administrator by Defendant as part of their employment recordkeeping.

**E.    The Proposed Notice Program Constitutes Adequate Notice And Should Be Approved**

Once preliminary approval of a class action settlement is granted, notice must be directed to class members. For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner

- 24 -

to all class members who would be bound by the proposal." Rule 23(e)(1).

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice. *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows Class Members to decide whether to opt out of or participate in the class and/or to object to the Settlement and argue against final approval by the Court. *Id*.

Here the proposed Class Notice (**Exhibit B** to the Settlement Agreement) accurately informs Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class. Mailing notice via first class mail is almost always presumed to be adequate notice for due process purposes.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval, provisionally certify the Class, approve the proposed class notice, and enter the Proposed Preliminary Approval Order.

Dated: October 22, 2020          **COHELAN KHOURY & SINGER**
                                 **LEBE LAW APC**
                                 **DAVID YEREMIAN &**
                                 **ASSOCIATES, INC.**
                                 **SOMMERS SCHWARTZ, P.C.**


                                 By:  s/J. Jason Hill _____
                                      J. Jason Hill
                                 Attorneys for Plaintiffs MARC
                                 RIVERA and JACQUELYN HUTTO,
                                 individually and on behalf of others
                                 similarly situated

- 25 -

Memorandum of Points and Authorities in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement Case No. 5:18-cv-01633-JGB-SHK

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101