# JS-5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-1633 JGB (SHKx)** | Date | November 20, 2020 |
|---|---|---|---|
| Title | ***Marc Rivera v. Western Express Inc. et al.*** | | |

Present: The Honorable     JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     **Order (1) DENYING Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 47); and (2) VACATING the November 23, 2020 Hearing (IN CHAMBERS)**

Before the Court is Plaintiff Marc Rivera's Renewed Motion for Preliminary Approval of Class Settlement. ("Motion," Dkt. No. 47.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed, the Court DENIES the Motion. The Court vacates the hearing set for November 23, 2020.

## I.   BACKGROUND

On May 15, 2018, Plaintiff Marc Rivera filed a Complaint against Defendant Western Express, Inc. ("Western Express") in the Superior Court for the State of California for the County of San Bernardino. (Dkt. No. 1-1.) On June 26, 2020, Plaintiff amended his Complaint as of right and filed a First Amended Complaint in Superior Court. ("FAC," Dkt. No. 1-2.) Plaintiff's FAC was brought on behalf of Plaintiff and a putative class of current and former employees of Western Express. (FAC.) The FAC alleges violations of various wage and hour provisions of the California Labor Code, unfair competition, and civil penalties pursuant to the Private Attorneys General Act ("PAGA") for the alleged wage and hour violations. (Id.) Western Express removed the case on August 3, 2018. (Dkt. No. 1.)

On February 26, Plaintiff filed his first Motion for Preliminary Approval. ("First Motion," Dkt. No. 27.) On March 2, 2020, Markson Plaintiffs ("Objector") filed an objection

to the First Motion.  (Dkt. No. 29.)  Defendant filed a Motion to Strike the objection on March 27, 2020.  (Dkt. No. 31.)

On May 1, 2020, the Court denied the First Motion and Defendant's Motion to Strike. ("First Order," Dkt. No. 44.)  The First Order found that Plaintiff met the burdens imposed by Federal Rules 23(a) and 23(b)(3), providing for the preliminary certification of a settlement class. (First Order.)  However, it also found information provided about the settlement to be lacking and expressed concern about the impact of a general release on the Objector, currently pursuing other claims against Defendant.  (Id.)  The Court invited the parties to move again for preliminary approval "with a revised release and additional information regarding the settlement."  (Id. at 14.)

On October 22, 2020, Plaintiff filed a Renewed Motion for Preliminary Approval. (Motion.)  Accompanying the Motion, Plaintiff also filed the following:

- Declaration of J. Jason Hill, ("Hill Declaration," Dkt. No. 47-2);
- The Settlement Agreement, ("Agreement," Hill Declaration Ex. 1);
- Proposed Second Amended Class Action Complaint, filed for the purposes of settlement only, (Hill Declaration Ex. 1A);[1]
- A California Labor and Workforce Development Agency ("LWDA") Notice dated April 6, 2018, (Hill Declaration p. 100);[2]
- California Secretary of State corporate information for Defendant Western Express, (Hill Declaration p. 111);
- Earnings statements, (Hill Declaration p. 114);
- PAGA Notice Letter dated August 7, 2018, (Hill Declaration p. 144);
- Proposed Notice information, (Hill Declaration p. 152);
- Declaration of Alvin B. Landsay, (Dkt. No. 47-3); and
- Declaration of David Yermeian, (Dkt. No. 47-4).

No oppositions or objections have been filed.

## II.    LEGAL STANDARD

The standard for approval of a class settlement appears in the Court's previous Order. (See First Order.)  Briefly, approval of a class action settlement requires certification of a settlement class.  La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted).  And at the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms."  See Fed. R. Civ. P. 23(e).  To determine whether a settlement agreement is

---

[1] Plaintiffs include the proposed Second Amended Complaint to add Jacquelyn Hutto as a Plaintiff and class representative.  The Court will therefore consider Ms. Hutto a Plaintiff for the purposes of settlement only.

[2] Plaintiff's exhibits appear to be mis-numbered.

potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

### III.   CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

In the First Order, the Court assessed a proposed settlement class comprised of "[a]ll current and former hourly non-exempt drivers residing in the State of California at any time during the period from October 26, 2016 to January 13, 2020." (First Order p. 4.)  This proposed class is different.  In the Motion, Plaintiff moves to conditionally certify a class of "[a]ll current and former hourly non-exempt drivers in residing in [sic] the State of California at any time during the period from October 26, 2016 to October 31, 2020." (Motion p. 1.)  The Agreement defines the class the same way: "all current and former hourly non-exempt drivers in residing in [sic] the State of California at any time during the period from October 26, 2016 to October 31, 2020." (Agreement ¶ 6.)[3]  The Court finds that the proposed settlement class meets the requirements of Rule 23.

#### A.  Requirements of Rule 23(a)

##### 1.  Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  To be impracticable, joinder must be difficult or inconvenient, but need not be impossible.  Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012).  There is no numerical cutoff for sufficient numerosity.  Id.  However, 40 or more members will generally satisfy the numerosity requirement.  Id.  A plaintiff has the burden to establish that this requirement is satisfied.  United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010).  Plaintiffs' proposed class is likely to include over 2,300 members.  (Motion p. 20.)  Accordingly, the Court concludes that the numerosity requirement is satisfied.

---

[3] The Motion cites to the Hill Declaration for its definition of the proposed class. Unfortunately, the Hill Declaration contains an incorrect description of the class—a serious error. (Compare Hill Declaration ¶ 12, "[a]ll current and former hourly non-exempt drivers in residing in the State of California at any time during the period from October 26, 2016 to January 13, 2020," with Agreement ¶ 6.)

## 2.  Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  All class members' claims flow from the same alleged injury—that Defendant's pay practices injured them by denying them compensation for meal and rest periods, among other things.  (Motion pp. 20-21.)  These claims are subject to common legal theories because Plaintiffs challenge the pay practices as a whole.  Accordingly, Plaintiffs have established commonality.

## 3.  Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct."  Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508).  Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members.  Hanlon, 150 F.3d at 1020.  Plaintiffs allege their claims are typical of those of the class because they arise from the same pay program—Plaintiffs were employees of Defendant during the releavant time period and their wages were subject to the same restrictions as other class members'.  (Motion pp. 21-22.)  Accordingly, the Court is satisfied that Plaintiffs have met the typicality requirement.

## 4.  Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).  Class counsel submits ample evidence of their own experience in support of a finding of adequacy.  (Motion p. 22; Hill Declaration.)  There are no declarations from either proposed class representative in the record, only a representation that "named Plaintiffs, like each absent Class Member, have a strong interest in proving WEX's productivity pay plan was a common and uniform  course of conduct, and each have the same interesting in obtaining redress."  (Motion p. 22.)  Nevertheless, the Court concludes that both the representatives and class counsel are adequate.

## B.  Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  Amchem Prod., Inc.

---

v. Windsor, 521 U.S. 591, 614 (1997).  Plaintiffs argue conditional certification is appropriate under Rule 23(b)(3). (Motion p. 24.)  Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs argue that individualized litigation would create the potential for inconsistent and contradictory judgments as well as increase delay and expense to all parties. (Motion p. 24.)  The Court agrees.  This case also raises special access-to-justice issues common in the aggregation of small value claims for which individuals might have difficulty finding representation alone.  Accordingly, Plaintiff's request to conditionally certify a class under Rule 23(b)(3) is granted.

## IV.   SETTLEMENT AGREEMENT

### A.  Settlement Summary

Subject to approval from the Court, the class of roughly 2,300 current and former employees of Defendant ("all current and former hourly non-exempt drivers in residing in [sic] the State of California at any time during the period from October 26, 2016 to October 31, 2020," Agreement ¶ 6) agree to a settlement with a total value of  $1,437,680.10.  (Agreement ¶ 28.)  Defendant may revoke the settlement if 2.5% or more of the proposed Settlement Class excludes themselves or opts-out of participation in the settlement. (Agreement ¶ 47.)

### B.  Settlement Terms

#### 1.  Financial Terms

Below is an overview of the approximate financial terms of the Agreement:

- Gross settlement amount:                          $1,437,680.10
- Attorneys' fees:[4]                                 $431,300
- Litigation costs:[5]                                $10,000
- Settlement administration costs:                  $25,000
- Service awards to class representatives:           $20,000
- PAGA payment to LWDA:                              $37,500

---

[4] This fee amount is calculated as 30% of the gross settlement amount, described as the maximum fee award in the Agreement. (Agreement ¶ 31.)  This does not reflect the Court's position on what appropriate fees may be.  Generally, a court may exercise discretion to award attorneys' fees in a class action settlement.  See Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).

[5] The Agreement still reads: ". . . plus the reimbursement of costs and expenses associated with Class Counsel's litigation and settlement of the Actions, not to exceed twenty thousand dollars ($10,000)."  As per the First Order, the Court will read this as $10,000. (See First Order n. 4.)

-   Net settlement amount:                                    $913,880.10

(Agreement ¶¶ 28-34.)  The gross settlement amount is non-reversionary.  (Id. ¶ 51.)  The Agreement states that "[t]he parties desire" uncashed funds "be sent to the California Controller Unclaimed Property Fund," however "in the event that the Unclaimed Property Fund is not or will not accept such funds," the parties designate "the Children's Advocacy Institute 'caichildlaw.org' as a designate cy pres for such funds."  (Id.)

### 2.  Settlement Class Members

Each member will be eligible to receive payment without submitting a claim form so long as they do not opt out.  (Motion pp. 8-9; Agreement ¶ 46.)

### 3.  Class Representatives

The Agreement provides for a service award of up to $10,000 for both Plaintiffs Rivera and Hutto.  (Agreement ¶ 32.)

### 4.  Settlement Administration Costs

The proposed settlement administrator, CPT Group, estimates costs to be $25,000.  (Id. ¶ 33.)  Administrator costs will not exceed $30,000 without prior approval of the Court.  (Id.)

### 5.  Attorneys' Fees and Costs

Class counsel will seek an award of attorneys' fees not to exceed 30% of the gross settlement amount and litigation costs not to exceed $10,000.  (Id. ¶ 31.)

### 6.  Injunctive Relief

There is no injunctive relief associated with the Agreement.

### 7.  Release

The Agreement releases:

> all claims, rights, demands, liabilities, penalties, fines, debts and causes of action of every nature and description, under state, federal, and local law, whether known or unknown, arising from the claims pled in the Plaintiffs' complaints filed in the Action or that could have been pled based on  the factual allegations in the operative complaint, in the Plaintiffs' original respective complaints, or in the Second Amended Class Action Complaint (Exhibit "A"), including but not limited to claims premised on alleged: unpaid wages, including any theory of piece-rate law, unpaid minimum

wage, meal and rest period premiums, waiting time penalties, itemized wage statements, wages for unpaid time, other civil or statutory penalties related thereto, and any claim based on California Labor Code sections 201, 202, 203, 204, 226, 226.2, 226.3, 226.7, 510, 512, 1174(d) 1194, 1194.2, 1197, 2699 et seq., the Private Attorneys General Act of 2004, California Code of Regulations, Title 8 Section 11000 et seq., the applicable Industrial Welfare Commission (IWC) Wage Orders, including 7-2001, Business & Professions Code section 17200-17208 or any related damages, penalties, restitution, disgorgement, interest or attorneys' fees. The "Released Claims" given by members of the Settlement Class excludes claims based and the facts and/or legal theories alleged or that could be alleged in Markson v. CRST, et al., United States District Court, Central District of California, Case No. 5:17-cv-01261-FMO-SPx, based on the operative Complaint filed in the Markson Action.

(Agreement ¶ 18.)

### 8. Notice

Within thirty days of this Order, Defendant will provide the class list to the Settlement Administrator. (Id. ¶ 39.) No later than 10 days after receiving this information, Settlement Administrator will send the Notice to each class member via U.S. Mail. (Id. ¶ 40.) Before mailing, the Settlement Administrator will take reasonable measures to verify the last known addresses provided, and if any Notice Packets are returned, the Settlement Administrator will attempt to determine correct addresses using skip-tracing or other searching. (Id. ¶ 41.)

The Agreement details that all class members will be mailed a Notice Packet containing the following: (1) the Notice of Class Action Settlement, Change of Address form, and pre-printed return envelope, and provide information regarding the nature of the Actions, (2) a summary of the Agreement's principal terms, (3) the Settlement Class definition, (4) the Class Member's Individual Workweeks during the Class Period, (5) the Class Member's estimated Individual Settlement Payment and the formula for calculating Individual Settlement Payments, (6) the Class Period dates, (7) instructions on how to submit valid Requests for Exclusion or objections, (8) the deadlines by which the Class Member must fax or postmark a Request for Exclusions or file and serve objections to the Settlement, and (9) the claims to be released, as set forth in the Agreement. (Agreement ¶ 42.)

In the First Order, the Court ordered the parties to amend the Notice to give class members more information regarding their right to dispute the hours Defendant claims each class member worked. (First Order p. 9.) Inexplicably, they did not do so. Nowhere in the Motion, the Agreement, or any of the attachments did Plaintiffs include any information for class members who believe their work hours have been misattributed. This is troublesome. Prospective class members who receive a Notice they believe is incorrect seem to have two choices: do nothing or opt-out. Both choices are unsatisfactory.

---

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT

The standards for preliminary approval were articulated in the First Order.  Briefly, to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable," Hanlon, 150 F. 3d at 1026, courts consider factors including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (internal citations omitted).  The settlement may not be a product of collusion among the negotiating parties.  In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

### A.  Scope of the Release

Again, a settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action. . . ." Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) (internal quotation marks omitted) (emphasis added).  Therefore, "[d]istrict courts in this Circuit have declined to approve settlement agreements where such agreements would release claims based on different facts than those alleged in the litigation at issue." Chavez v. PVH Corp., 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015).

In the First Order, the Court found the parties' Release of Claims overbroad.  The release at issue here is identical to the release addressed in that Order with the exception of the last line—this release carves out "excludes claims based and the facts and/or legal theories alleged or that could be alleged in Markson v. CRST, et al.," presumably enough to keep objectors happy. The Court is still concerned about the breadth of the Agreement's release, but will acknowledge the proposed release is much narrower than it was.  This factor is neutral.

### B.  Extent of Discovery and Stage of the Proceedings

In the First Order, the Court noted that Plaintiffs failed to explain "why such a minimal review of Defendant's records was sufficient." (First Order p. 11.)  Plaintiffs have not explained. Indeed, as the Court previously stated, "[a] critical part of Plaintiff's theory of the case is that Defendant's policies encouraged class members to miss meal and rest breaks.  But it is not clear to the Court how a review of 'shift, pay, and class aggregated wage data' would allow Plaintiff to confirm whether that was the case." (Id.)

This lack of discovery and data gathering is precisely why it is important that there be a mechanism for prospective class members to challenge Defendant's representation of their hours worked and wages owed.  It appears Plaintiffs have no way of challenging incorrect wage statements because Plaintiffs have not conducted sufficient discovery to know better.  This factor weighs against approval.

### C.  Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

The Court previously found that this factor weighs in favor of preliminary approval; it remains unchanged.  (First Order pp. 11-12.)

### D.  Amount Offered in Settlement

"Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case."  Millan v. Cascade Water Servs., 310 F.R.D. 593, 611 (E.D. Cal. 2015).  Here, the recovery amount is consistent with amounts found to be fair and reasonable.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (permitting settlement amount that was one-sixth of potential recovery); Deaver v. Compass Bank, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving a settlement that was 10.7% of the total potential liability).

The gross settlement amount is $1,437,000—which, after fees and costs, becomes a net settlement amount of $913,880.10.  (Motion.)  Plaintiffs calculate the class' maximum potential recovery as $6,021,478 without interest or attorneys' fees.  (Id. at 17.)  Bizarrely, Plaintiffs once again argue that the fact that the settlement is non-reversionary makes the amount offered fair.  (Motion p. 17.)  As the Court stated in the First Order, "whether a settlement amount is non-revisionary is irrelevant to whether the *amount* is fair."  (First Order p. 12 (emphasis in original)).  This factor weighs in favor of approval, however, Plaintiffs are reminded that this factor concerns amount of settlement and not whether that amount is reversionary or not.

### E.  Experience and Views of Counsel

Counsel's qualifications have been discussed.  (See First Order p. 13.)  In addition, the Court previously noted: "While Plaintiff argues that '[d]eference to Class Counsel's evaluation of the settlement is appropriate' and spills much ink regarding Class Counsel's experience, he fails to state what Class Counsel's evaluation of the settlement is."  (First Order p. 13.)  This Motion has cured that defect.  (See Yeremian Declaration ¶¶ 24-25.)  Accordingly, this factor supports approval.

### F.  Collusion Between the Parties

The Court previously found that this factor weighs in favor of preliminary approval; it remains unchanged.  (First Order pp. 13-14.)

Once again, more than one factor weighs against approval.  Plaintiffs must revise the Notice to inform class members of their right to dispute the number of weeks worked or face another denial of their motion.  Amendment to the Notice is critical given the scarce discovery conducted by Plaintiffs.

## VI.    CONCLUSION

For the reasons above, the Court DENIES Plaintiff's Preliminary Approval Motion without prejudice.  Plaintiff is free to move again for preliminary approval with a revised release. The November 23, 2020 hearing is VACATED.


**IT IS SO ORDERED.**