UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-1633 JGB (SHKx)** | Date | April 25, 2022 |
|---|---|---|---|
| Title | *Marc Rivera, et al. v. Western Express Inc. et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| James Jason Hill (Zoom)<br>Diana M. Khoury | Chris S. Milligan |

**Proceedings:** Order (1) GRANTING Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 56); and (2) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 55)

Before the Court is Plaintiffs Marc Rivera and Jacquelyn Hutton's ("Plaintiffs") unopposed motion for final approval of class action settlement ("Motion," Dkt. No. 56) and motion for attorney's fees ("MFA," Dkt. No. 55). The Court held a final approval hearing on April 25, 2022. Upon consideration of the papers filed in support of the Motion, as well as oral argument, the Court GRANTS the Motion and GRANTS the MFA.

## I. BACKGROUND

On May 15, 2018, Plaintiff Marc Rivera filed a Complaint against Defendant Western Express, Inc. ("Western Express") in the Superior Court for the State of California for the County of San Bernardino. (Dkt. No. 1-1.) On June 26, 2018, Plaintiff amended his Complaint as of right and filed a First Amended Complaint in Superior Court. ("FAC," Dkt. No. 1-2.) Plaintiff's FAC was brought on behalf of Plaintiff and a putative class of current and former employees of Western Express. (FAC.) The FAC alleges violations of various wage and hour provisions of the California Labor Code, unfair competition, and civil penalties pursuant to the Private Attorneys General Act ("PAGA") for the alleged wage and hour violations. (Id.) Western Express removed the case on August 3, 2018. (Dkt. No. 1.)

On February 26, 2020, Plaintiff filed his first Motion for Preliminary Approval. ("First Motion," Dkt. No. 27.) On March 2, 2020, Markson Plaintiffs ("Objector") filed an objection

to the First Motion. (Dkt. No. 29.) Defendant filed a Motion to Strike the objection on March 27, 2020. (Dkt. No. 31.) On May 1, 2020, the Court denied the First Motion and Defendant's Motion to Strike. ("First Order," Dkt. No. 44.) In the First Order, the Court found that Plaintiff met the requirements of Federal Rules 23(a) and 23(b)(3), providing for the preliminary certification of a settlement class. (First Order.) However, the Court lacked information about the settlement and expressed concern about the impact of a general release on the Objector, who is currently pursuing other claims against Defendant. (Id.)

On October 22, 2020, Plaintiff filed a Renewed Motion for Preliminary Approval. ("Second Motion," Dkt. No. 47.) No oppositions or objections were filed. The Court denied the Second Motion without prejudice. ("Second Order," Dkt. No. 48.) In the Second Order, the Court found that Plaintiff failed to explain how prospective class members could challenge Defendant's representation of hours worked and wages owed given Plaintiff's lack of discovery and data gathering. (Second Order.)

On August 20, 2021, Plaintiffs filed the unopposed revised motion for preliminary approval of class action settlement. (Dkt. No. 49.) The Court granted the motion on October 28, 2021. ("Preliminary Approval Order," Dkt. No. 52.)

On February 2, 2022, Plaintiffs filed an unopposed motion for attorneys' fees, costs, and incentive award, unaccompanied by the requisite final approval motion. ("MFA," Dkt. No. 55.) In support of the MFA, Plaintiffs attached the following documents:

- Declaration of Diana M. Khoury, ("Khoury MFA Decl.," Dkt. No. 55-2);
- Declaration of David Yeremian, ("Yeremian MFA Decl.," Dkt. No. 55-3);
- Declaration of Kevin J. Stoops, ("Stoops MFA Decl.," Dkt. No. 55-4);
- Declaration of Jonathan M. Lebe, ("Lebe MFA Decl.," Dkt. No. 55-5); and
- Declaration of Declaration of Erin La Russa, on behalf of CPT Group, Inc., ("CPT MFA Decl.," Dkt. No. 55-6).

On March 28, 2022, Plaintiffs filed the unopposed Motion for Final Settlement Approval, ("Motion," Dkt. No. 56), and following documents in support of the Motion:

- Declaration of Diana M. Khoury, ("Khoury Decl.," Dkt. No. 56-2); and
- Declaration of Declaration of Erin La Russa, on behalf of CPT Group, Inc., ("CPT Decl.," Dkt. No. 56-3);

## II. THE SETTLEMENT AGREEMENT

The Settlement defines the class ("Class") as follows:

> All current and former employee drivers of Defendant who resided in California during the Class Period, whose jobs duties included, among other things, driving commercial

motor vehicles and performing related services within the State of California, and who were paid on a 'piece rate' and/or rate-per-mile basis for compensation purposes.

(Settlement Agreement, "SA," ¶¶ 6-7; Motion at 2.) The Class Period is October 26, 2016 through December 31, 2020. (Id.)

### A. Settlement Summary

Below is an overview of the financial terms of the Settlement:

- Gross settlement amount: $1,510,040.12
- Attorneys' fees: $453,012.00
- Costs $9,530.65
- Total service award for class representatives: $20,000.00
- Administration costs: $27,000.00
- LWDA payment: $37,500.00
- PAGA payment: $12,500.00

(Motion at 6-7; SA ¶¶ 4, 8, 11.)

### B. Financial Terms

#### 1. Settlement Class Members

The Class consists of 2,308 Class Members. (Motion at 2.) One Class Member has opted-out of the class. (Id. at 11.) No one has objected to the Settlement Agreement. (Id.)

#### 2. Payment and Distribution of Funds

The Net Settlement Amount ("NSA") will be distributed to Participating Class Members based on the number of weeks worked during the Class Period. (Motion at 7; SA ¶ 13.) The method of distribution allocates funds based on weeks worked, does not give preference to any Class Member, and the information needed to distribute the Settlement is readily accessed from Defendant's records. (Motion at 7.)

Participating Class Members have a total of 50,467 work weeks. (CPT Decl. ¶ 12.) Based on the Work Week information and the estimated Net Settlement Amount, Participating Class Members may expect to receive an estimated $18.87 per work week. Based on that calculation, the highest Settle Payment is an estimated $4,132.84 and the average Settlement Payment is an estimated $411.65. (Id.)

The Settlement Administrator will calculate the Participating Class Members' payments, report taxes, mail settlement payment checks, answer Class Members' questions, mail a

reminder postcard to all Class Members who have not cashed their Settlement Payment checks, and forward all sums represented by uncashed checks to the State of California, Controller's Office. (CPT Decl. ¶ 15.)

The gross settlement amount is non-reversionary. (Motion at 6.) Any checks that remain uncashed 180 days after the date of mailing will be canceled, and the funds will be transmitted to the California State Controller's Office, Unclaimed Property Division, in the class member's name. (SA ¶ 53.)

### 3. Class Representatives

The Settlement provides for Enhancement Payments of $10,000.00 to each Class Representative, Marc Rivera and Jacquelyn Hutton, for their participation in the litigation. (Motion at 6; SA ¶ 13.)

### 4. Settlement Administration Costs

The Court previously appointed CPT Group, Inc. as the Settlement Administrator. ("Preliminary Approval Order," Dkt. No. 52, at 10). The Settlement Administrator will be paid approximately $27,000.00 for notice and claim administration. (CPT Decl. ¶ 15; SA ¶¶ 11, 13.) Costs are to be paid out of the settlement common fund. (Id.)

### 5. Attorneys' Fees and Costs

The Settlement provides that Class Counsel may apply for attorneys' fees in an amount not to exceed 30% of the gross settlement and litigation costs not to exceed $20,000. (SA ¶ 4.)

## C. Injunctive Relief

The Settlement does not appear to include any injunctive relief.

## D. Release

Under the Settlement, Participating Class Members who do not request exclusion agree to release Defendant and the Released Parties under the following terms:

> [A]ll claims, rights, demands, liabilities, penalties, fines, debts and causes of action of every nature and description, under state, federal, and local law, whether known or unknown, arising from the claims pled in the Plaintiffs' complaints filed in the Action or that could have been pled based on the factual allegations in the operative complaint, in the Plaintiffs' original respective complaints, or in the Second Amended Class Action Complaint (Exhibit "A"), including but not limited to claims for unpaid wages, including any theory of piece-rate law, unpaid

minimum wage, meal and rest period premiums, waiting time penalties, itemized wage statements, wages for unpaid time, other civil or statutory penalties related thereto, and any claim based on California Labor Code sections 201, 202, 203, 204, 226, 226.2, 226.3, 226.7, 510, 512, 1174(d) 1194, 1194.2, 1197, 2699 et seq., the Private Attorneys General Act of 2004, California Code of Regulations, Title 8 Section 11000 et seq., the applicable Industrial Welfare Commission (IWC) Wage Orders, including 7-2001, Business & Professions Code section 17200-17208 or any related damages, penalties, restitution, disgorgement, interest or attorneys' fees for the period from October 26, 2016 through December 31, 2020.  The "Released Claims" specifically excludes claims based on the facts and/or legal theories alleged or that could be alleged in Markson v. CRST, et al., United States District Court, Central District of California, Case No. 5:17-cv-01261-FMO-SPx, operative Complaint that include anti-competitive claims for the hiring of former employees of other potential defendants in the Markson case.

(SA ¶ 20.)

**E.  CAFA Notice**

Defendant removed alleging CAFA jurisdiction.  ("Notice of Removal," ¶¶ 7-9.)  The Settlement Agreement provides that "[w]ithin ten (10) calendar days after Plaintiffs file the Renewed Motion for Preliminary Approval, Defendant shall mail the notice of proposed settlement and required information pursuant to the Class Action Fairness Act of 2005 ("CAFA")…."(SA ¶ 65.)  At the April 25, 2022 hearing, counsel for Plaintiffs indicated that CAFA's notice requirements have been satisfied.

**F.  Notice**

The Settlement Administrator distributed the Class Notice to Class Members via first class mail.  (Motion at 10; CPT Decl. ¶ 3.)  CPT performed a skip trace on all returned mail without a forwarding address using Accurint, which utilizes hundreds of different databases supplied by credit reporting agencies, public records, and a variety of other national databases.  (CPT Decl. ¶ 3.)   The Notice Packet was mailed to 2,309 Class Members.  (Khoury Decl. ¶ 12.)  One Class Member requested to opt-out and no Class Member objected to the settlement.  (Id.)

**G.  Administration**

CPT Group, Inc. serves as the Settlement Administrator.  (See CPT Decl.)  Settlement administration duties include: (1) populating, printing, and mailing the Class Notice; (3) responding to Class Member inquires as appropriate; (4) performing necessary additional skip traces on any notices and/or checks returned as undeliverable; (5) calculating the Settlement Shares of Participating Class Members; (6) resolving disputes during the administration process;

(7) preparing and mailing settlement checks to the Participating Class Members; (8) preparing and distributing Court-approved payments to itself, the LWDA, Class Representatives, and Class Counsel; (9) preparing all appropriate tax forms required in connection with the payments called for by this Settlement and remitting those forms and all required payments to the appropriate governmental agencies; (10) preparing a report summarizing the administration of the settlement; and (11) generally performing all normal and customary duties associated with the administration of the settlement. (Id.)

### III.    LEGAL STANDARD

#### A.  Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. Id. Nevertheless, the Court must examine the settlement as a whole for overall fairness. Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. Hanlon, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." Id.

In order to approve a class action settlement, the Court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Id.

#### B.  Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund in the calculation of reasonable attorneys' fees. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). Whether to use one method over the other is in the court's discretion, however, the use of the percentage method in common fund cases appears to be dominant. Id.

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. In re Bluetooth, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.) Under the lodestar method, a "a lodestar figure is calculated by multiplying the

number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Id. at 941 (citing Stanton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003)). Whether the court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." Vizcaino, 290 F.3d at 1048. To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. Id. at 1050-51.

## IV. DISCUSSION

### A. Class Action Settlement Final Approval

Defendant removed alleging CAFA jurisdiction. ("Notice of Removal," ¶¶ 7-9.) The Settlement Agreement provides that "[w]ithin ten (10) calendar days after Plaintiffs file the Renewed Motion for Preliminary Approval, Defendant shall mail the notice of proposed settlement and required information pursuant to the Class Action Fairness Act of 2005 ("CAFA")...."(SA ¶ 65.) At the April 25, 2022 hearing, counsel for Plaintiffs indicated that CAFA's notice requirements have been satisfied.

#### 1. Rule 23(c) Notice Requirements

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires that "the best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23 (c)(2)(B).

The Court previously approved the form of the proposed class notice. (Preliminary Approval Order at 7-8.) As discussed above, the Settlement Administrator implemented the notice procedure. (See CPT Decl.) Based on CPT's Declaration, the Court finds that the Class Notice and notice procedure fairly and adequately informed the Class Members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the Class Members right to exclude themselves from settlement, and their right to object to the proposed settlement.

#### 2. Whether the Class Settlement is Fair, Adequate, and Reasonable

##### a. The Strength of Plaintiffs' Case, and Risk, Expense, Complexity, and Duration of Further Litigation

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 975

(internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." (Id. at 976.)

Under the circumstances, the Court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). The Court finds that this factor supports a finding that the settlement is fair, adequate, and reasonable.

### b. The Risk of Maintaining Class Action Status Through Trial

In its order granting preliminary approval, the Court certified the class pursuant to Rule 23(b)(3). (See Preliminary Approval Order.) The Court determined that the requirements of Rule 23 were met and provisionally certified the class for settlement purposes. (See id.); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"). Nothing has been put forth to challenge or otherwise undermine the court's previous order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class."). This factor weighs in favor of approving the settlement.

### c. The Amount Offered in Settlement

The Court previously found this factor supports approval. (See Preliminary Approval Order.) Nothing has changed since that time. The average Settlement Payment is an estimated $411.65. (CPT Decl. ¶ 12.) This factor weighs in favor of approving the settlement.

### d. The Extent of Discovery Completed and the Stage of Proceedings

On May 15, 2018, Plaintiff Marc Rivera filed a Complaint against Defendant Western Express, Inc. ("Western Express") in the Superior Court for the State of California for the County of San Bernardino. (Dkt. No. 1-1.) By early December 2018, the parties explored the possibility of an early mediation and agreed on an informal exchange of data and information. (Motion at 5.) On August 28, 2019, Defendant informally produced for mediation purposes the total number of: (1) Class Members for the period through August 28, 2019; (2) former employee Class Members through August 28, 2019; (3) wage statements issued to Class Members from May 15, 2017 through August 28, 2019; (4) Class Member Pay Periods from April 6, 2017 through August 28, 2019; (5) shifts worked by Class Members through August 28, 2019; and (6) the number of currently employed class members. (Id.) Defendant also produced a sampling of Class Member raw driver logs that encompassed 32,771 lines of data detailing time punch records for 591 shifts. (Id.) Plaintiff's counsel also accessed Plaintiff's pay records and employment files, and accessed contact information for approximately 10 to 12 Class Members. (Id.) Counsel

interviewed the Class Members revealed an alleged common pay plan, unpaid (and untaken) rest periods, and an alleged disincentive for drivers to take rest of meal periods. (Motion at 5-6.) Counsel's review of the data and information, together with Plaintiff's earning statements and Class Member interviews, provided Plaintiff's damages consultant with enough information to calculate and extrapolate Class-wide damages for each claim. (Id. at 6.)

The Court previously determined that this factor weighed in favor of approval. (See Preliminary Approval Order.) It remains so.

### e. The Experience and Views of Counsel

The Court has previously determined that Class Counsel's substantial experience supported approval. (Id.) The factor remains unchanged.

### f. The Reaction of Class Members to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecoms., 221 F.R.D. at 529. One Class Member requested to opt-out and no Class Member objected to the settlement. (Motion at 11.) The lack of objections and single request for exclusion support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, at *14 (E.D. Cal. 2012) (factor weighed in favor of approval when two out of 2,055 class members opted out with no objections to the settlement).

## B. Attorneys' Fees

The Settlement provides that Class Counsel may apply for attorneys' fees in an amount not to exceed 30% of the gross settlement and litigation costs not to exceed $20,000. (SA ¶ 4.) The attorneys' fee award is 30% of the gross settlement, which exceeds the 25% benchmark in percentage of the recovery awards. See In re Bluetooth, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.) However, due to various factors, the Court finds this award amount appropriate.

Nearly four years have passed since Plaintiffs filed this action. As previously discussed, the risks of continued litigation were significant. (Preliminary Approval Order at 9-10; see Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee). Class Counsel submitted documents which demonstrate that they will have worked over 830 hours on this matter through the resolution stage valued at approximately $547,998.50, which exceeds their attorneys' fee request. (Khoury MFA Decl. ¶ 15.) Finally, Class Counsel took this case on a contingent basis. (Id. ¶ 36.) The Court finds no issue that would require further inquiry to determine whether a percentage below 30% would be a more appropriate award to counsel. Consideration of the foregoing factors supports Class Counsel's

request for attorney's fees in the amount of 30% of the settlement fund, or $453,012.00, and costs not to exceed $9,530.65. The court is satisfied that a lodestar "cross-check" is not required. See Craft v. City of San Bernardino, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.")

The Court previously preliminarily approved an incentive award of $10,000 to Class Representatives Marc Rivera and Jacquelyn Hutton, to total $20,000. (See Preliminary Approval Order.) Given that there have been no developments to change the Court's decision on this matter, the Court finds that this award is remains appropriate.

## V.   CONCLUSION

The Court determines that:

1. Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 56) is GRANTED.

2. The Court GRANTS final approval to the parties' Settlement Agreement. The Court finds that the Settlement Agreement is fair, adequate, and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties shall perform their obligations pursuant to the terms of this Settlement Agreement and this Order.

3. Plaintiffs' Motion for Attorneys' Fees and Costs (Dkt. No. 55) is GRANTED.

4. The following class is certified under Federal Rule of Civil Procedure 23(c) for settlement purposes:

   > All current and former employee drivers of [Western Express, Inc.] who resided in California during [October 26, 2016 through December 31, 2020], whose jobs included, among other things, driving commercial motor vehicles and performing related services within the State of California, and who were paid on a 'piece rate' and/or rate-per-mile basis for compensation purposes.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiff Marc Rivera will be paid a service award of $10,000 in accordance with the terms of the Settlement Agreement and this Order.

7. Plaintiff Jacquelyn Hutton will be paid a service award of $10,000 in accordance with the terms of the Settlement Agreement and this Order.

8. Class counsel shall be paid $453,012.00 in attorneys' fees and $9,530.65 in costs in accordance with the terms of the Settlement Agreement.

9. The Settlement Administrator, CPT Group, Inc., shall be paid for its litigation costs of $27,000 in accordance with the terms of the Settlement Agreement.

10. All class members who did not validly and timely request exclusion from the Settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

11. Except as to any class members who have validly and timely requested exclusion, this action is DISMISSED WITH PREJUDICE, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of this Court.

12. Without affecting the finality of this Order, the Court retains jurisdiction over the parties, including Class Members, for the purposes of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

13. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**